Tompkins, J.,
delivered the opinion of the Court.
At the February term of the Circuit Court for Howard county, for the year 1832, Jim was indicted for the murder of William B. Johnson, and pleaded not guilty) and issue was then joined. Afterwards he filed a petition for a change of venue. In this petition he stated that, at the time when this indictment was found, he was the slave of D. Todd, and that he still was his slave; and that said Todd, at the time of finding said indictment, was the Judge of the Circuit Court of Howard county, and that he still continued to be so. The Court did not grant the petitioner’s prayer. He then moved for leave to plead the facts stated in the petition to the jurisdiction of the Court. His motion was overruled. He then, by leave of the Court, pleaded the same facts in bar of the prosecution. To this plea a demurrer was filed on the part of the State, and sustained by the Court. The prisoner was then put upon his trial, and being found guilty, a motion was made in arrest of judgment, and overruled by the Court; judgment was then pronounced, and to reverse this judgment the writ of error is prosecuted.
Leonard for the prisoner. At the last term of this Court, a transcript of the record of the judgment was produced here, and the Court moved for a writ of error and supersedeas, which was granted. The record is now certified to this Court, and the plaintiff here has assigned for error.
First. The refusal of the Court to award a change of venue.
Second. The refusal of the Court to permit the prisoner to plead to the jurisdiction of the Cpurt, the facts suggested in his petition.
Third. The judgment of the Court for the State, upon the demurrer taken by the Attorney General to the prisoner’s special plea in bar.
Fourth. The refusal of the Court to arrest the judgment on account of defect of jurisdiction.
At the last term, when application was made for this writ of error, it was objected on the part of the State, that a writ of error would not lie in treason or felony, and that if it would, it could only be brought with the consent of the Attorney General. That objection may be renewed at the present term, and will therefore now be answered.
The question might and perhaps ought to be considered at rest by the cases which have already been adjudged in this Court: (a slave) against the State, decided in the Second District at the term 1831, and Sams against the State, decided in this District at the last December term, are cases directly in point. In support of this jurisdic *109 tion, they were brought intd the Supreme Court by writs of error, taken by the defendants below, to reverse Circuit Court judgments given against them upon indictments for^murder, and in the first case the judgment was reversed, and in the last affirmed, and in neither case was the consent of the Attorney General aslted or given. In Callaway v. The State, 1 Mo. Rep. 212, and Blunt v. Shepherd, 1 Mo. Rep. 219, the opinions expressed by the Court do in effect affirm its jurisdiction in the present case; but it is not proposed at this time to rely upon the authority of these, cases. The Constitution and laws of this State furnish ample ground to uphold this jurisdiction, independent of any construction which may have been given to our Constitution and laws by the judgments of this Court. The constitutional (amendments of 1822, 2 sec.) vest the judicial of the State in a Supreme Court, Circuit Courts, and such inferior tribunals as the General Assembly may from time to time ordain and establish. It then proceeds to distribute this power, and in art. 5, sec. 2, declares that the Supreme Court, except in cases otherwise provided in that instrument, shall have appellate jurisdiction only, which shall be co-extensive with the State, under the restrictions and limitations in the Constitution provided. These restrictions and limitations are found in the 5th sec. of the 5(h art., which provides that “ the State shall be divided.into convenient districts, not to exceed four, that in each district two terms shall be held annually, and that the Court when sitting in either district, shall exercise jurisdiction over causes arising in that district only;" and the excepted cases in which this Court is authorized to exercise original jurisdiction, are enumerated in the 3d sec. of the 5th art., where the Court has authority conferred upon it “ to issue writs of habeas corpus, rnimdamas, quo warranto, and other original and remedial writs, and to hear and determine the same.” The appellate jurisdiction of this Court therefore extends over all the judgments both civil and criminal that are given in the Circuit Courts, For it is expressly declared to be coextensive with the State. To whatever subject or place the original judicial power of this State will reach to that subject and to that place, the appellate jurisdiction of this Court extends also; your jurisdiction has the same extent and limits that the former has, and no other. And this great and extensive power is conferred upon this tribunal by the people, not by their agents ; by constitutional, not by legislative enactment. The Legislature therefore cannot enlarge nor diminish it, they can neither add to nor take from it. And whenever a case of appellate jurisdiction arises, and the authority of this Court is invoked, the Court is bound to exert it, it cannot decline the jurisdiction. It is the constitutional right of every subject of the laws of this State to claim its exercise. Such is the view taken by the Supremo Court of the United States, of the power of that tribunal under the Federal Constitution, which in this particular is similar to our own, Durousseau v. the United States, 2 Pet. Cond. Rep. 382; Marbury v. Madison, 1 Pet. Cond. Rep. 283; but whether this Court can exert the power thus vested in it, without the aid of a legislative act providing the means by whiob it may be exercised, is a question certainly of great moment; but one that need not now he discussed. In Chesolm’s executors againt the State of Georgia, 2 Pet. Cond. Rep., and in New York v. New Jersey, 5 Pet. U. S. Rep., 284, the Supreme Court of the United States appear to express and act upon the opinion, that the legislative act is necessary to give the powers of that Court activity. And the same opinion in re? lation to the powers of this Court, seems to have been entertained by the Court in English v. Mullanphy, 1 Mo. R., 780, and in Blount v. Shepherd, 1 Mo. R., 219, the *110 appellate jurisdiction of the Court was exercised in a case where the Legislature have not merely failed to provide a writ by which it might be exerted, but had expressly withheld the necessary writ for that purpose; but, however, this question may be settled. The act of the General Assembly, 2 Rev. L. Mo., 491, adopting the common law of England, and the 17th sec. of the 1st chap, of the act concerning “ Courts,” 1 Rev. L. Mo., provide ample means by which this Court can exert its appellate jurisdiction over a final judgment of the Circuit Court given against a defendant on an indictment for murder. The former act, by adopting the common law, introduces into our jurisprudence a writ of error, and the latter act authorizes this Court in common with all other Courts, “ to issue all writs which may be necessary in the exercise of their jurisdiction, according to the principles and usages of law.” By these acts a writ of error is provided, and authority is given to this Court to issue it. By means of this writ, this Court may exert its appellate jurisdiction in the present case, if by the common law it is an appropriate writ for the revision of the present judgment. At common law a writ of error lies to every final judgment, whether civil or criminal, and to every award in the nature of a final judgment of a Court of record, proceeding according to the course of the common law. Co. Lit., 288, 6 Bac. Abr., title “ error.” The Queen v. Patty and others, 2 Salk., 504; 2 Ld. Rayd. 1105; 3 Mass. Rep., 187, 305; and in England a commission from the King issuing out of Chancery under his great seal, to the Judges of a Superior Court, authorizing them to examine the record, and on such examination to reverse or affirm the judgment according to law. Bac. Abr., title “ error.” In furnishing this writ, the general law of the land has provided the means by which this Court can exert its constitutional jurisdiction over all the final judgments of a Circuit Court, and expressly authorized this Court to use the writ, if it is necessary, in the exercise of its jurisdiction. And to the objection that the Legislature did not intend to allow the writ in criminal cases, or they would have given it expressly, as they have in civil cases ; the answer is obvious. If the constitutional power of this tribunal cannot be exercised, without some law prescribing the manner in which it should be exerted, it is as much the duty, of the General Assembly to enact such a law, as it is the duty of the Executive to fill this Court with its constitutional number of Judges. And if a mode in which this Court can exert its constitutional power is prescribed in a general system of law which the Legislature has adopted, we cannot in decency presume that the General Assembly tacitly intended, in violation of its duty, to forbid this Court from adopting that mode of exerting its authority. Such a construction of the laws of the land, would be an unwarrantable reflection by the judicial department upon a co-ordinate branch of the government. And if this Court can entertain jurisdiction of a writ of error in any case where it is not expressly authorized by statute to do so, it will be no difficult matter to show how little ground those have to stand upon, who assert that this jurisdiction cannot be exerted over prosecutions for treason or felony, without consent of the Attorney General. If such was the law of the land, it would not only be a just reproach to our jurisprudence, but a strange anomaly in our legal system. That this tribunal, which was intended as the ultimate and great constitutional guardian of the rights of the citizen against all encroachments and violations, whether committed by individuals or by the government, and whose appellate jurisdiction the Constitution expressly declares shall be eocxtenstve with the State, should not be allowed to extend its protection to the life of a citizen put in jeopardy by a prosecution for treason or felony, unless with the con *111 sent of a particular officer of the government, to be given or withheld acccording to his arbitrary will and pleasure, is a proposition well calculated to excite our astonishment, and those who assert it, ought to furnish undoubted proofs of its correctness, before they can expect to command for it our assent. By the laws of England, a party defendant cannot have a writ of error upon a judgment in treason or felony, without the consent of the King expressed by his Attorney General. These writs of error, in all civil cases, and also in all criminal cases other than treason and felony, are demanded of right and granted ex debito justicia. Even the King himself cannot refuse them. But in treason and felony, they are not writs of right, and are only granted with the consent of the King, expressed through his Attorney General. This consent it is true is now, however, rarely refused and is always given when a debatable question can be made upon the record, per Lord Eldon in Mathews v. Warner, 4 Ves. jr., 207; but yet the writ is never issued without such consent. And hence it is aTgued that under our Constitution and existing laws, this Court cannot exert its appellate jurisdiction over a judgment in treason or felony, by means of a writ of error, without the like consent of the chief law officer of the State. Now it is to be observed, that according to the theory of the English law, it is the King’s writ which confers the jurisdiction upon the Court to hear and determine the cause; and, therefore, in England a writ of error is not merely a process to remove a judgment from an inferior to a superior Court, but it is also the commission or warrant of the Sovereign to the Judges of the Superior Court which authorizes them to examine the record and reverse or affirm the judgment. All their authority over the judgment is derived from the writ, and without a writ they have no appellate jurisdiction ; but the jurisdiction of this Court is derived from the Constitution and not from the writs which the Court is authorized’to issue. These writs confer upon our Courts no authority, but are the mere instruments, the modes in which the authority already vested is exercised. It is not pretended in England, that a writ of error is not a common law mode of exerting appellate jurisdiction over judgments in treason and felony; but it is the undoubted law of England that no appellate jurisdiction over any such case exists in any of their Courts, unless the Sovereign shall please to confer it, by issuing his writ of error for that purpose ; but here the Constitution has already conferred the jurisdiction, and'no authority can exist in any officer of the government to determine when these powers shall be exerted, and when they shall be dormant. Even this tribunal itself has no such discretion. Both the jurisdiction, and the obligation to exert it, if there is any mode prescribed by law, is imposed by the Constitution. There is therefore no analogy between the cases. It is manifestly no ground for inferring that this Court cannot entertain jurisdiction of a writ of error, in treason or felony, without the consent of the Attorney General: because the British King has, at common law, a discretion to grant or withhold at his will and pleasure, from his superior Courts, appellate jurisdiction over such cases. It may therefore, we think, be safely affirmed that this Court, under the Constitution and existing laws, has appellate jurisdiction over the present judgment, and is bound to,exercise that jurisdiction by writ of error, independent of any consent to be given by the Attorney General, or by any other officer or department of the government. The question then will be whether there is any error in the record, and in the prosecution of this inquiry, we propose to raise only two points at present for the consideration of the Court.
First. That the Circuit Court erred in refusing to change the venue.
*112 Second. That the Circuit Court erred in giving judgment for the State, upon the demurrer taken by the Attorney General to the prisoner’s special plea in bar. Upon the first point two questions will be made.
First. 'Whether there is any law in force, in making it the duty of the Circuit Court to award a change of venue, upon the facts suggested in the prisoner’s petition for that purpose.
Second. Whether these facts, and the refusal of the Court to award a change of venue, are so preserved in the record as to enable this Court to declare that there is error in such refusal.
In examining the first question, the attention of the Court will necessarily be called to the following acts of the General Assembly. The “ Court Act” of the 7th January, 1825, 23 sec. 1 chap. (Rev. L. Mo., 1 vol., 276), The “ Venue Act” of the 16th of February, 1825, (2 Rev. L. Mo., 786). The “ Amendatory Venue Act” of 1829, (Session Acts of ’28-’29, p. 59,) and the “ Venue Act” of 1831, (Session Acts of 1830 — ’31, p. 93). The 23d section of the “ Court Act,” among other things, provides that no Judge of the Circuit or Probate Court, shall sit in the determination of any cause or proceeding, either civil or criminal, in which he is interested or related to either party,or who shall have been of counsel; but such cause or proceeding, if pending in the Circuit Court, shall be removed to some county where such objection does not exist according to law.” It then procéeds to direct the mode of proceeding, where the cause is pending in the Probate Court, and concludes with the proviso, “that in no criminal cases shall the venue be changed, without the consent of the defendant.” The 1st section of the “ Venue Act” of 1825, authorizes a change of the venue in civil proceedings in certain cases, provides a mode of obtaining it by petition to the Court in term, or to the Judge in vacation ; stating the facts verified by oath of the applicant, and also authorizes the Court to change the venue, without the application of either aarty, if the Judge is interested, or related to, or has been of counsel'for either party.” The 2d section provides, that any defendant in any indictment or information, shall be entitled to a change of venue, if he shall fear that he will not receive a fair and impartial trial, on account that the Judge is interested or prejudiced, or that the minds of the inhabitants of the county are prejudiced against him,” and directs the mode of obtaining the change of venue, to be by petition to the Court in term, or to the Judge in vacation ; stating the facts, and verified by affidavit. The 3d section of the act directs the mode of certifying the record when the venue is changed in vacation, and express^ authorizes the Court to which the venue is so changed in vacation, to hear and determine the cause. This act contains neither of these provisions in relation to cases removed in term. The 1st section of the amendatory “ Venue Act,” directs the Clerk to do and perform all things when the venue is changed in term, which he is required by the 3d section of the amended act to perform where the venue is changed in vacation. And the 2d section directs the manner of certifying the record in criminal cases,, where two or more are indicted and the venue is changed only as to one. These are the only legislative acts that have any bearing upon the question now under consideration, except the last venue act of January, 1831. If that act had never been passed, no doubt could have existed as to the obligation of the Court to have awarded a change of venue upon the facts suggested in the prisoner’s petition. These facts disclose the existence of an interest in the Judge of the Howard Circuit Court, within the words of the 23d section of the “ Court Act” of 1825. He' was the owner of the slave about to be put *113 apon trial for his life. Upon the issue of that trial depended his rights of property in that slave. Here then Was a full, clear, direct and strong interest in the Judge, and although it was an interest in favor of the prisoner, it was yet an interest within both the words and spirit of the statute. It was both the policy and intention of the Legislature to provide a tribunal for the determination of criminal cases above all exceptions. A Court upon whose disinterestedness, not only the prisoner, but the whole community might repose with perfect confidence. The General Assembly has therefore prohibited an interested Judge from sitting in the determination of any criminal cause: and made it the duty of the Court to remove such cases to some county where the objection does not exist, provided the prisoner consents to such removal. This proviso was manifestly inserted to save the constitutional right of the accused, “a trial by a jury of the vicinage/ which the Legislature supposed would be impaired by a removal of the cause without his consent. The Legislature prohibited the trial of criminal cases before an interested Judge, and then went as far as they thought they constitutionally could go, to provide for the trial of such causes in a disinterested tribunal. In the case at bar, therefore, the interest oi'the Judge •disclosed in the prisoner’s petition, disqualified him from sitting in the trial of the case, ousted the Court in which he presided of all jurisdiction to hear and determine it, and made it obligatory upon the Court, if the prisoner consented, to remove the proceeding to some county where the objection did not exist. And by such an order of removal the Court designated in it to receive the cause, Would have become possessed of it, and have acquired by necessary implication, jurisdiction to hear and determine it. But it is argued that if there is no authority in the Court where the cause originated, to remove it for trial into another jurisdiction, that then it must be tried in the county where it arose. Assuming. for the present the correctness of this position, (which is, however, as we think, far from being a legal conclusion from the premises,) then the question will be, whether the authority given in the 23d section of the Court act, to remove a case where the Judge is interested, is taken away by any subsequent act of the Legislature. The last “venue act” of Jan., 1831, (session acts of 1830, 31 p.) repeals in express terms the venue law of 1825, and the amenda-tory venue law of 1829, and only authorizes the removal of causes in civil cases pending in the Circuit Courts where the Judge is interested or related to, or has been of counsel for either party, and provides the mode of removal. No part of the 23d section of the “Court act” is expressly repealed by this act. This is not pretended. The whole express repealing force of the “last venue act” is spent Upon the venue act of 1825, and the amendatory venue act of 1829; but it is insisted that so much of the 23d section of the “Court act” as gives the authority to remové a criminal case, is repealed by implication, and the argument is that the “ venue act ” of 1825, and the amendatory venue act of 1829, are the only statutes which prescribe the mode of removing causes, and that as the prescribed manner of removing is taken away, the authority to remove is extinguished by implication. Do the words “ according to law ” in the 23d section of the Court act, necessarily refer to the statute mode of removing causes ? They are large enough to embrace a common law, as’well as a statute mode. Besides, this argument is not altogether correct in point of fact. Eor the 23d section of the Court act gives authority to remove a criminal case where the Judge is related to, or has been of counsel to a party, and yet neither the venue act of 1825, nor the amendatory venue act of 1829, prescribe any statute mode for the removal of such causes; but there is no necessity for pressing *114 this objection against the argument. For admitting that the venue law of 1825 did prescribe a mode for the removal of every class of eases directed to be removed by the 23d' section of the Court act, does it follow that the repeal of a particular statute mode of removing causes, is a repeal by implication of an independent statute, directing the cause to be removed ? If the 23d section of tbe Court act had merely directed the causes therein enumerated to be removed, without prescribing the manner of removal, either expressly or by reference to some other statute, would the enactment have been void ? In the case supposed, would not the will of the Legislature have been sufficiently manifested, and would the Courts have been at liberty to'disappoint that will, because the particular mode of removal was not pointed out? Whenever the judicial or any other department of the government is authorized or directed to do an act, all the means necessary to accomplish the act, are given by implication. This is a general principle of construction and of universal application. In construing constitutional grants of authority, it is always held that where a power is granted,, the means of executing the power are granted by necessary implication. And the Same principle is expressly recognized by the common law as applicable to the construction oí statutes. Whenever a provision of a statute is general, every thing which is necessary to make such provision eflectual, issupplied by the common law. Boe. Jlbr., title “ statute,” letter B. and 1st Inst. 235, and 2nd Inst. 222, are cited. “Whenever a power is given by a statute, every thing necessary to make it effectual is given by implication.” Bac. Abr., title “ statute,” letter B. and 12 Rep. 130-1, and 2 Inst. 306 are cited. And these things are said to be incidental to a statute. Ñow if the 23d section of the “Court act” would have been effectual, although no mode of removal had been prescribed in that or any other statute, does the venue act of 1831, which repeals the venue laws of 1825 and 1829, in which the mode of removing cases is prescribed, repeal by implication so much of the 23d section of the “Court act* as directs criminal cases in which a Circuit Judge is interested, to be removed out of his juiisdiction? If the 23d section of the Court act would have been effectual and valid without the aid of the venue laws of 1825 and 1829, is it not clear that the repeal of these laws cannot touch the validity of the authority to remove conferred by the Court act ? Repeals by implication are never favored, and we have no hesitation in saying, that it would be the duty of this Court, if the case required it, to struggle hard against an implied repeal of the section under consideration. If the authority conferred by this section «.extinguished, a Circuit Judge must either try a case in which he is directly and deeply interested, or offenders of the highest grade may go unpunished for want of a competent tribunal to try them. It is against natural equity and the moral sense of mankind to permit an individual to sit in judgment in a case in which he has a clear strong interest. And the same strong feeling of impropriety is excited in the Community by permitting high offenders to go unpunished for want of a disinterested tribunal to investigate their guilt and inflict the penalty. It has been held even in England, where parliamentary omnipotence is acknowledged, that a statute against natural equity is void, and the very case taken as an illustration is that of an act of Parliament making a man judge in his own causes. Bac. Abr., titled “statute,” letter A. Even those English writers who deny this general doctriné, admit that where some collateral consequence arises out of the general words of a statute, which is un.easonable and contrary to natural law, the Courts'are in decency to conclude, that this consequence was not foreseen by Parliament, and therefore they are at liberty to expound the statute by equity and *115 quoad hoe disregard it. And therefore they say that if an act of Parliament gives a .man power to try all causes that shall arise in his manor, of Dale, it shall he so construed as to exclude him from exercising jurisdiction over his own case, although it arises within the manor. 1 Black. Com. 91. And if a statute ought to he construed against the express letter in order to avoid the gross impropriety of giving an individual jurisdiction over his own cause, surely this Court will not favor a repeal hy implication, when the effect of such repeal is to bring upon the laws of this State the just reproach either of compelling a Circuit Judge to sit in the trial of a.cause in which he is interested, or of failing to .provide a disiterested tribunal for the trial of an individual upon an accusation of murder. "We submit, therefore, whether this Court will not affirm the truth of these propositions. That the 23d section of the Court act of 1825 is in force, and untouched by the repeal of the venue acts of 1825 and 1829. That the facts suggested in the prisoners petition disclose an interest in the Judge of the Howard Circuit Court within the meaning of that section, ousted the Court of its jurisdiction to hear and determine the case, and .made it the duty of that tribnnal, if the prisoner consented, to remove the cause for trial to some jurisdiction where the objection did not exist. And that in .the absence of any statute mode of removal, it was competent for and the duty of the Court to provide a mode.
The other-question involved in .the point now under consideration, is, whether the disqualifying facts suggested in the prisoner’s petition, and the refusal of the Court to remove the cause to some other jurisdiction, are so preserved in the record as to enable this Court to pronounce that the Circuit Court erred in refusing the change of venue. The record shows the .fact, that after the cause was put at issue, and before the calling of the jury, the prisoner applied to the Court to remove the cause. It also discloses the facts upon which that application was predicated, by preserving in the record the petition in which they are alledged.; and it contains the proceedings and judgment of the Court upon the application. So far there would seem to be no difficulty. The application, the suggestions of fact in the petition, and the refusal of the Court to award a change of venue, are all in the record, and must be considered as facts of the record. Upon what principle are these things to be rejected, as forming no part of the record of the present suit? What is the record but a history of the proceedings of the Court in the case ? Many cases of the removal of criminal prosecutions occurred in our Courts under the venue act of 1825, and in all those cases was not the application for the change of venue, the suggestion of facts in the petition, and the judgment, of the Court awarding or refusing a change of venue, part of the record of those suite ? Was this ever denied, and can it be denied? In such-a case, how is the Court in which the indictment was found, discharged upon the record from its obligation to determine the cause; or how is the Court to which the cause is removed invested upon the record with jurisdiction to try it, unless the application, the facts suggested in the petition, and the award of the Court are to be considered as part of the record ? If, under that statute, upon a sufficient suggestion of facts, a Circuit Court had refused a change of venue, or had allowed a change upon an insufficient sugffestion of facts, would not there have been error in the proceedings, to which the appellate jurisdiction of this Court wo.uld have extended? And yet, how could this Court have exerted jurisdiction, without considering the application, the facts suggested, and the allowance or disallowance of the change of venue as parts of the record ? And how is the case at bar to be dia= *116 tinguished l'rom the case put ? It is true that in the case put by way of illustration the cause is removed in the mode prescribed by a statute; but in the casé at bar, no statute mode of removal exists. But can this difference make any distinction between the cases, as to the question whether the proceedings had upon an application for the removal of a cause, shall be considered part of the record ? The statute prescribing the mode of removal, does not expressly declare that these proceedings shal^ be a part of the record ; but yet they must be, and are so considered. They are material proceedings in the correct determination of the cause ; they are proceedings in which the inferior Court may commit error to which the appellate jurisdiction of this Court extends, and over which it cannot be extended without so considering them? and they are capable of being and are in point of fact sufficiently preserved in the record. To the objection that from aught that appears upon the record, the change of venue may have been disallowed because the matters suggested in the petition were untrue in point of fact, it might perhaps be answered that the verification of the petition by the oath of the parly, ought to be considered conclusive as to their truth not only in analogy to what .the Legislature prescribed in the venue act of 1825; but also to avoid the gross absurdity of suffering a Judge whose jurisdiction is contested on the score of interest to try the question as to the existence of that interest; but admitting that the oath of the applicant is not to be considered as conclusive and that the truth of the facts may be contested, the question then is, whether this record shows that the change of venue was disallowed, because the matter suggested was untrue in point of fact or because it was insufficient in point of law to warrant the removal of the cause to another jurisdiction ? There were only two legal modes of disposing of the prisoner’s suggestion, a demurrer and a traverse. The latter would have brought up the question of fact, whether the matter suggested was true, and the former the question of law, whether, admitting it to be true, it was sufficient in law to warrant the removal. Now if the record shows that the suggestion was not disposed of upon a traverse which raised the question of fact, then of course it must have been disposed of upon a demurrer, which admitted the truth of the facts; but contested their sufficiency in point of law to warrant the removal of the cause. But if there had been a traverse of the facts, there must have been a trial of the traverse by a jury, not only because such is the mode of trial for ascertaining the truth of facts in criminal prosecutions, prescribed by the common law and sanctified by the constitution ; but because there was, no other mode of trial in this case, which did not involve in it gross absurdity, of permitting a Judge to try the preliminary question of his interest in order to determine the ultimate question of his jurisdiction. And if there had been such a trial of the truth of the suggested facts, there must have been also in the history of the suit a record of such trial and verdict in order tb have justified the Court upon the record, in refusing to remove the case and in proceeding therein to find judgment and execution. But this record shows no trial and no verdict of a jury, affirming or negativing the truth of the suggested facts. The cunclusion, therefore, is in accordance with the truth of the case, that the matter of the petition was disposed of upon an ore temls demurrer, admit, ting the truth of the matter, but contesting its sufficiency in point of law to warrant the removal of the cause to another jurisdiction. Such too is a fair interpretation of the entry in the record containing the award of the Court upon the matter. And in this view of the case, it is now pefectly immaterial whether the facts suggested in the petition were true or false. If the judgment of the Cpurt refusing to remove the *117 cause was given upon the question of law, and was in point of law erroneous, that judgment must now be reversed.
Second point. The second matter relied upon as error in the record, is the giving of judgment for the State upon her demurrer to the prisoner’s special plea in ban The matters stated in this plea are the same that were suggested in the prisoner’s petition for a removal of the cause, and are here relied upon as a bar to the prosecution against the prisoner in the Howard Circuit Court. And the only question is whether they constitute a good bar? Whenever a Court has no jurisdiction over the cause, the facts disclosing that defect of jurisdiction constitute a good plea in bar. This doctrine is founded on plain legal principles laid down by elementary writers and supported by the adjudged cases. In 1 Chit. Plead. 427, it is said that when a Court has no jurisdiction at common law, or it has been taken away by act of parliament, such want of jurisdiction may be pleaded in bar or given in evidence under the general issue. In Parker v. Elding, (1 East. R. 352,) which was an action of assumpsit in King’s Bench, a verdict was taken on the trial for the defendant, because the jurisdiction of the Court had been taken away by act of parliament, and the Court when moved for that purpose refused to set aside the verdict. In Pennsylvania the Courts put a stop to the proceedings at any stage, on its being shown that they have no jurisdiction. Mamhardt v.- Soderstrom, 1 Bin. Rep. 138. Moon v. Wait, 1 Bin. Rep. 219. In the federal Courts it is well settled, that want of jurisdiction may be taken advantage of by demurrer, or upon the trial, by motion in arrest of judgment, or upon writ of error. Wood v. Waynam, 1 Cond. Rep. 335 ; Capron t>. Yan Noorden, 1 Cond. Rep. 370; Manvalet v. Murray, 2 Cond. Rep. 19; Turner v. Enrille, 1 Cond Rep. 205; Catlett et al v. Pacif. Ins. Com., 1 Payne Rep. 594, cited in note 1 Cond. Rep. 171. It is even held that a party in the federal Courts may reverse his own judgment upon writ of error, where the want of jurisdiction in the Court rendering the judgment is manifest on the record, Capron v. Van Noorden, 1 Pet. Cond. Rep. 370. Nevertheless, federal judgments are not considered absolutely void like the judgmedts of an English inferior Court, unless the jurisdiction of the Court appears on the face of the proceedings, but only voidable by writ of error or other direct process brought to repeal them, McCormich et al v. Sullivan et al, 10 Wheat. 192 cited in note, in 1 Cond. Rep, 208. Now do the facts alledged in this plea disclose a defect of jurisdiction in the Howard Circuit Court to hear and determine the case at bar? We shall here assume upon the argument which has already been submitted, that the 23d sec. of the “Court act ” is in force and unimpaired by the repeal of the venue acts of 1825 and 1829. That the facts disclosed in this plea show an interest in the Judge of the Howard Circuit Court within the meaning of that section, and that the interest ousted the Court of its jurisdiction, to hear and determine the case. And if these propositions are true, the validity of the plea seems to be unquestionable. English pleas in abatement to the jurisdiction of the Courts of Westminster Hall, are founded altogether upon different matter, and have no bearing upon the present question. The ground of those pleas is not the defect of jurisdiction in the Supirior Courts; but the personal privilege of the party to be sued in another jurisdiction, provided he insists upon the privilege in due time, and in a proper manner. The Courts of Westminster Hall have undoubted jurisdiction over all the cases where pleas in abatement to the jurisdiction can be taken; but at the same time there is a conmireait jurisdiction existing in another Court, which become exclusive in' set in that case in due *118 son and in a proper manner; but there is nothing of that kind here. The 23d sec. of the Court act does not confer a mere personal privilege upon the defendant, but limits the jurisdiction of the Circuit Courts in the cases therein enumerated. It does not require the defendant to claim a removal of the cause as a mere personal right, a favor intended for him, which he may forfeit unless he insists upon it in due season and in a proper manner; but expressly takes away all jurisdiction to hear and determine, and makes it obligatory upon the Court to remove the cause to some other tribunal, without requiring the defendant himself to stir in the matter. It is argued however that the prisoner may, according to the proviso, prevent a removal of the cause by withholding his consent to it, and that in that event the Court has, by necessary implication, jurisdiction to try it. Now admitting that a Judge may acquire by mere implication power to try his own case, and that therefore the Howard Circuit Court might have acquired jurisdiction to hear and determine the present prosecution, by the prisoner’s refusal to consent to its removal, yet that does not touch the validity of this plea.
The matter alledged in it brings the case within the body of the act, and so ousts the Court' of its jurisdiction, and if the Court acquired jurisdiction by implication growing out-of the proviso, upon the prisoner’s -refusal of his consent to the removal of the cause, the State ought to have brought the case within that proviso, by showing in her replication such refusal of consent on the part of the prisoner. If the cause had been removed without the application of the prisoner, his consent to the removal must have appeared upon the record, and so when the cause is retained under circumstances that prima facia require its removal, the prisoner’s refusal of his consent to the removal ought also to appear upon the record, in order to justify the Court there, in retaining the cause and-in proceeding in it to final judgment and execution. So that in either event, whether the Court had or had not jurisdiction upon the prisoner’s refusal to consent to the removal, the plea is good, and the judgment against it upon the demiirrer erroneous.
“ Wells, Attorney Genera], for the State.” As no other objections were made below, it is presumed that nothing else will be assigned for error, but the overruling the prayer for a change of venue, and sustaining the demurrer.
First. As to the overruling the motion to change the venue by the act of January 15th, 1831. The former laws, which allowed a change of venue in criminal cases, were repealed; and by that act a change of venue was allowed in civil cases; but by that act the Court must be satisfied of the truth of the statements. So by the common law, the Court must always be satisfied of the truth of the causes alledged, and that the party could not receive a fair trial: 1 Chit. Crim. Law, 494-5, and page 201, 136. Whether the Court upon hearing the evidence was satisfied, or ought to have been satisfied, does not appear. It may well have been that the Judge knew the slave not to be his. That he never owned him, or had sold him, or freed him, or these matters may have been proved by the Stale, or the defendant may not have adduced sufficient proof of the facts stated; The Circuit Court is always presumed to have decided correctly, until the contrary appear. So we must presume in this case. For aught we can see in the record, the refusal of the Court to direct a change of venue was correct, there can be no error in that: Butcher v. Keil and Butcher, 1 Mo. Rep. 262, and Dayis v. Hays, 1 Mo. Rep. 270. But there is another objection to the party obtaining a change of venue, which is that by pleading the general issue he puts-himself upon the country — that is upon'» jury of the county— *119 that is of Howard county, and it was too late to ask a change of venue — he waived his right to a change of venue: Tidd’s Prac. 553; 3 Bos. and Pul. 12; Talmash v. Penner, Wheaton Rep. 221; Patterson v. U. S., 1 Cond. Rep. 208, in note 2. Here the application is founded on the 23d section of the act establishing Courts of Justice, and prescribing their powers and duties, (approved 7th January, 1825,) which makes the consent of the defendant in a criminal case necessary before the venue can be changed — and it must either be the privilege of the Court to change it, with the consent of the defendant, or the privilege of the defendant himself. If the privilege of the Court, then the Court did not choose to exercise it. If the privilege of the defendant, then he did not choose to exercise it; but by appealing to a jury of Howard county, he waived his privilege. The above section applies both to civil and criminal cases, and it applies to the Supreme, Circuit and County Courts ; and there are three causes for the change of venue, where the Judge is interested or related to either party, or has been counsel. Can this provision mean that the party to whom the Judge is related may object, or the party in whose favor the Judge is interested may object, or the party for whom the Judge may have been counsel may object, and in either of those cases against the wish of the party supposed to be injured, claim a ohange of venue. This too where the Court is willing to try the case. The act aforesaid says that the Judge shall not sit; but that the cause shall be removed to some county where the objection does not exist according to law, referring either to an act on the subject of changes of venue then before the General Assembly, or prepared by the revisors as a part of a system, or to an act to be passed on the subject. If it referred to an act then before the General Assembly, entitled an act to provide for changing the venue in civil and criminal cases, ( Dig. 786,) only the party who could be injured had the right to apply for the change for the causes enumerated in the section under which the change of venue is now claimed, or the Court might change it. If it referred to an act yet to be enacted, or to such provisions as might be enacted, then the act cannot be carried into effect allowing the change of venue, until the method and manner are pointed out or until provision is made. If it referred to the common law, then the Court must be satisfied of the truth of the matters alledged, and that the party could not get a fair trial without the change of venue. It must be obvious to every one, that the General Assembly never intended that a party who could not possibly be injured by a cause, which if it injured any person would alone injure the opposite party, should make that cause a pretext for changing the venue against the protest of the party who alone could be injured. Neither the common law, nor any statute law, ever authorized such a thing. The venue could only be changed by the Court itself, (out of delicacy,) or upon the application of the prisoner, who was, for the causes alledged, not likely to get a fair trial unless he procured or was allowed a change of venue. Here even the Court could not change the venue without the consent of the defendant: as to construction of statutes, 1 Cond. Rep. 340, Faw v. Merstetter; and 1 Cond. Rep. 422, U. S. v. Fisher; and 1 Cond. Rep. 348, Pennington v. Coxe. Suppose in a civil suit the plaintiff should alledge that the Judge of the Circuit Court had once been his counsel in that eause, and should make that a pretext for changing the venue to some other Circuit — and the defendant should object to the change of venue — could it be error for the Court to refuse the change of venue? The thing cannot be supposed — . the Legislature could not have intended it: for they have said the venue shall be changed according to law, and by the law the application must come from the party *120 likely to be injured. Even by the former law in regard to changes of venue, the party applying must give reasonable notice of his application to the adverse party, or the Court could not hear his application ; that was not done in this case as to the plea in bar. It will appear from the statute that the objection is only to the Judge sitting, and the remedy is the change of venue. The indictment was properly found in Howard — and could not be removed except by the consent of the defendant. There is no want of jurisdiction in the Court, for if the Judge should sell the negro or free him, or if the Judge should die, or resign, or be removed, then the trial could be held and had in Howard, or remanded if changed to another county. The Court is not divested of its jurisdiction: 1 Cond. Rep. 208, in note 2; Wheaton, 221; the Court tried the cause and said the party waived the right, &c. If the Court has no jurisdiction of the subject matter, then the plea would be good. But here it is a mere personal privilege of the defendant to have his cause removed, and not an objection to the jurisdiction of the Court. If the plea in bar to the jurisdiction would be good, then the same objection might be urged on the trial of the plea of not guilty —it being nothing but an argumentative plea of not guilty. It cannot be necessary to argue to this Court, that a mere personal privilege to have the trial of a cause removed, could procure the acquittal of a felon — that it would be equally good on the general issue, upon trial: see 1 Ch. P. 427-8-9; 1 Condensed U. S. R. 170, Bingham v. Cobbett; 3 Dall. 382 and 370, Capron v. Noodin; 2 Cra. Rep. 126; 6 East, 597, King v. Johnson. The reason why a want of jurisdiction can be taken advantage of on the trial, or in a plea in bar, is, that consent cannot give jurisdiction. But here consent can give jurisdiction, because the case cannot be removed without such consent, and a consent was given by pleading the general issue, and referring the trial to a jury of Howard county: see cases above referred to in 1 Cond. Rep. 370 and 770. The refusal of the Court to change the venue, can only be noticed by this Court in two ways.
First. By saving the evidence and the objection on the trial of tile matters alledged in the petition.
Second. By applying to this Court to compel the Circuit Court to remove the cause before trial, by mandamus or certiorari.
Third. It will appear from the statute, and also from what has been said above, that the General Assembly, first, could not have intended that the person who could not be injured by the cause being tried when the indictment was found, should -procure a change of venue to another county on that account, as the act says “ it shall be removed according to law,” and all the laws that have been enacted, or ever will be enacted, confine the objection or application to the person likely to be injured. In some cases allowing the objection to come from the Court, which might be done by the Court in this case, (by consent of tile defendant, as a matter of delicacy,) but which the Court could not be compelled to have done — and the not doing of which would not he error, or it was merely the expression of an intention on the part of the General Assembly to make provision for changes of venue in such cases; but until such provision should he made, the Court could not remove the cause : or if the General Assembly did any thing more than express an intention to make provision for the change of venue, then it referred the change to the act of the same session and a part of the same system, (on the subject of venue,) and by the repeal thereof, they intended to disallow changes of venue in criminal cases. For no person can suppose that the General Assembly could have intended that a murderer *121 should not he tried at all, and therefore escape punishment for a crime that strikes at the root of society. For a Court to impute such an intention to the General Assembly of this State, would he unwarrantable. As the Courts are to be governed by the intention of the General Assembly in construing statutes, it follows that they cannot give such a construction as they could not suppose the General Assembly intended to be given. In construing statutes, it is always fair for the Court to put themselves in the place of the General Assembly, and then inquire, could he have intended such a construction to be given ; they must also take the whole statute and every provision together, to find the meaning of the General Assembly. The letters of the statute will not prevail if the cause is not within thé spirit of the law, or the matter is not within the mischief: 1 Cond. Rep. 340, 348, 422, in notes above referred to. In Kentucky they have statutes allowing a change of venue for certain causes, (not unlike our own,) at least before the repeal of the late acts; and in construing which the following matters have been decided. In Owens v. Owens, Hardin R. 158, the Court of Appeals decided that where a change of venue had been improperly obtained, and the cause thereby awarded to another county, the party objecting or wishing to object to the change of venue, on account of its having been improperly obtained, must make his objection on his first appearance in the county to which the cause is removed; that it is like a plea to the jurisdiction of the Court. In Ship v. Gale, Hardin R. 224, the Court decided that the order for the change of venue must be filed thirty days before the term, otherwise the party will not be entitled to it. (This shows that the cause for the change of venue does not affect the jurisdiction of the Court as to the subject matter, and that it may be waived.) In Baker v. Hopkins, 1 Marshall’s Rep. 587, the Court decided that both the Court from which the venue has been changed, and that to which it has been changed, have jurisdiction of the subject matter; and any objection on account of the venue’cannot be made after verdict — it is too late. In Brooks and others v. Clay, 3 Marshall’s Rep. 546-7, and in 7 Littell’s R. 262, the Court decide that erroneous proceedings in regard to a change of venue, never make a discontinuance; and also decide (547) that where the venue has been improperly changed, and the party would object on that account, he must be held to the same strictness in point of time as he would be in a plea in abatement, and the objection must be made at the first convenient hour. In Jones v. Greegett, 1 Bibb Rep. 448, the Court decided that where the venue had been improperly changed, (the petition, &.C., not being sufficient,) and the party appeared and pleaded in chief, it was too late to object to the jurisdiction of the Court, or moye to strike the cause from the docket. In Deering v. Halbut, 2 Littell’s Rep. 292, the Court decide that where all the necessary steps had been taken to change the venue, and the order made for that purpose and filed, yet if the party went on with the trial without objection, he could not afterwards object to the jurisdiction. An examination of the statutes on the subject, and the above cited authorities, fully establish these propositions.
First. That the General Assembly did not intend that a murderer should not be tried at all. If he is to be tried, he must either be tried where the indictment is found, or there must be a change of venue; that the indictment can only be found where the offence was committed.
Second. That the General Assembly by repealing the laws upon the subject, did not intend there should be a change of venue in a criminal cause; but if they intended that there should be a change of venue in such cases, yet they never in *122 tended, nor did the common law intend, that the party should object to the Judge, because he was interested in procuring his acquittal. Tidd, and 1 Chit. Cr. Law.
Third. That if the General Assembly intended .a change of venue in such cases, (that is, criminal cases,) it must be changed according to law. By which they meant either the law contained in the Revised Code and part of the same system, (in fore materia,) or a law to be enacted, or the common law ; and by none of these could the party in whose favor the interest operated, or fox whom the Judge had been counsel, or to whom the Judge was related, obtain the change of venue : and by the law as it existed at the time the change was asked, (statute 1831,) and by the common law, the Judge must-be satisfied of the truth of the matters alledged for change of venue.
Fourth. That whether the Judge was satisfied of the truth of the matters contained in the petition, or ought to have been satisfied, does not appear on the record. 1 Mo. Rep., 262, 270.
Fifth. The matters alledged as cause for changing the venue, do not affect the jurisdiction of the Court as to the subject matter ; but are mere objections to the Judge. That the jurisdiction of the Court, both as to the person of the defendant and as to the subject matter, is undeniable.
Sixth. That the changing the venue is a privilege which the defendant may waive, (like the privilege of the scholars of Oxford and Cambridge, not to be sued in any Courts but those of their respective Universities).
Seventh. That the defendant did so waive it by pleading in chief and appealing for trial to a jury of Howard county. Tidd. 3, Bos. and Pul., 1 Cond. Rep., and Ken. Rep.
Eighth. That the plea-in bar is nothing moje than an argumentative plea of not guilty — and the same matters would, if the plea be good, have procured his acquittal on the trial of the plea of not guilty. 1 Ch. P.; 1 Cond. Rep., 170, 370; 6 E. R., 597.
Ninth. That if the plea in bar be good, the defendant could not and cannot be tried at all for the felony and murder.
Tenth. That the only true rule in construing statutes, is to take them all and every part of each together, and find what was the intention of the General Assembly— and to say that the General Assembly did not intend that a murderer should not be tried at- all, and that because he objected to being tried on account that the Judge was interested in procuring his acquittal, is an absurdity so great, and a disrespect for the legislative branch of the government so flagrant, that it deserves no argument to refute it. 1 Cond. Rep., 340, 422, 348.
Eleventh. That there are two kinds of objections to the jurisdiction of the Court. --one a personal privilege which may be waived, and to assert which there must be a plea to the jurisdiction of the Court in abatement, or by motion equivalent, which is the first step in a cause; the other is an objection to the Court taking cognizance of the cause on account of its not having jurisdiction of the subject matter, or in some cases of special or limited jurisdiction, that it has not jurisdiction of the persoii. That the objection to the jurisdiction on account of the Court having no jurisdiction of the subject matter, or having none of the person of the defendant, cannot exist in this case. For if this Court has not the jurisdiction, then no Court has it. This last plea may be in bar, or the matter may be given in evidence under the general issue.
*123 Twelfth. It is manifest that the General Assembly did not intend that the interest of the Judge should cause a failure of justice: for in the same section which directs the venue to be changed in case the Circuit Judge be interested; it is also declared that where a Judge of the Supreme Court is interested or has been counsel, or is related to either party, he shall not sit in the cause, provided a Court can be formed without such Judge. By which it is certainly intended that he shall sit, although interested, if a Court cannot be formed without him; and this, too, where there has already been a trial of the cause in the Circuit Court. But it is contended for the defendant, that if the Circuit Judge be interested, he shall not sitj although there could be no trial unless he sat: nor does the petitioner show that he does not expect a fair trial, therefore it is not sufficient either at common law or under the old statute,- or under the new statute. It has already been remarked, that if the plea in bar (to the jurisdiction) be good in law, the defendant could not be tried at all for the felony and murder; and I will add, that if it be good, there can be no change of venue, this being a consequence of the other proposition. I will, to make this more clear, add a few words to what has already been said, although it is like attempting to prove that two and two make four. The defendant could be .indicted in no other county than Howard, that being the county where the offence was committed, and therefore thegrandjury of no other county could take jurisdiction of the matter — they being sworn to inquire only for the body of their county. When the indictment is found in Howard, the defendant appears and pleads in bar to the jurisdiction of the Court, that the Judge is interested. If the plea be good, the only judgment that can be given it is that the prosecution be barred. Surely it cannot be pretended that the Court could give judgment that there be a change of Venue — for that would not be the object or prayer of the plea, nor an answer to the plea — if the plea be good, it is good to bar the prosecution. Every indictment that could be found by the grand jury would be thus pleaded to, and thus barred; so that the defendant could not be tried at all for the felony and murder. Nor can it be pretended that by demurring, the State confesses the facts stated and set forth in the plea, for any other purpose than as to the plea itself. The amount of the admission is nothing more, than admitting all the facts stated in the plea to be true, yet they do not bar the prosecution. It would be going back to the horn book of the law to attempt to prove that the admission implied in the demurrer can have any other effect. The very form of the demurrer shows this — " that the said plea and the matters and things therein contained, and as therein pleaded and set forth, are not sufficient in law to bar or preclude the said State from having and maintaining said prosecution.” The whole matter may be summed up in a few words :
First. The petition for a change of venue came too late, as shown by the reason of the case, by analogy and by the authorities cited expressly in point.
Second. That if in time, yet there is nothing on the record, (no evidence being saved,) to show that the facts alledged in the petition were true or were proved oa the hearing of the motion for a change of venue, or to show that they were not disproved.
Third. That the change of venue was a personal privilege not affecting the jurisdiction of the Court, as proved by the authorities cited.
Fourth. That as it did not affect the jurisdiction of the Court, it could not be good as a plea in bar.
*124 Fifth. That if the plea in bar he good in law, it bars this prosecution, and a like plea would bar any and every prosecution that could be commenced; and therefore the defendant could not be punished at all for the felony and murder.
Sixth. That the only judgment that can be given on the demurrer to the plea, (if it be good in law,) is, that the prosecutions be barred, and no judgment can be given that there be a change of venue.
Seventh. That the. demurrer to the plea cannot help the petition or motion for a change of venue, nor will the consent of the defendant to the change of venue be of any effect, unless the matters stated in the petition be true; and whether true or false this Court cannot tell.
It is assigned for error :
First. That the Circuit Court erred in refusing to change the venue.
Second. That the Court erred in sustaining the demurrer to the prisoner’s plea in bar. By the 23d section of the act to establish Courts of Justice, and to prescribe-their powers and duties, it is provided that no Judge of the Circuit or Probate Court shall sit on the determination of any cause or proceeding, either civil or crimina], in which he is interested, &e. But such cause or proceeding, if pending in the Circuit Court, shall be removed to some other county where the same objection does not exist, according to lam. See R. C., 276. The act of 16th February, 1825, to provide for the change of venue in civil and criminal cases, provides in the 2d section, that when any defendant in an indictment in any Court of this State,, shall fear that he will not receive a fair and impartial trial in the Court in which the trial is pending, on account that the Judge is interested or prejudiced, such party may apply to the Court in term time for a change of venue by petition, setting forth the cause of such application, &c., and the Court shall award a change of venue to some county where the causes complained of do not exist. See R. C., 787. The act of 22d January, 1829, contains nothing material to this cause. (See p. 59.) By 4th section of the act to provide for changing the venue in causes cognizable in the Circuit Courts, approved January 15th, 1831, it is enacted, “that the act entitled an act to provide for the changing of the venue in civil and criminal cases, approved 16th February, 1825, and the act amendatory thereof, approved on the 22d day of January, 1829, he repealed,” and by that act no further provision is made for a change of venue in crirninal causes. The questions to be settled by this Court, are:
First. Did the prisoner make out such a case of interest in the Judge, as would entitle him to a change of venue, supposing the law he not repealed ?
Second. Did he make his application in a proper lime and manner?
Third. Is there any law to authorize a change of venue?
First. The prisoner filed his petition, stating that he was the slave of the Judge of the Court: he pleaded the same thing in bar of the prosecution; and the plea being demurred to, the truth is admitted. The Jaw, in prescribing the duty of the Judge in such case of interest, directs that such cause shall he removed to some county where the same objection does not exist. See 23d soction Revised Code, p. 276; and the act 16th February, 1825, above cited, authorizes the prisoner to apply to the Court for a change in such cases. In the first statute cited, it seems to be the duty of the Court to act whenever it may acquire information of the interest; and in the second statute the prisoner is authorized to bring the facts before the Court in a particular manner, and to require its action. The interest is such in the opinion of this Court as would entitle the prisoner to a change of venue. For on the one hand the policy *125 of the law and the interest of the government require that a Judge should not he exposed to the temptation of doing wrong by sitting in a cause where he is interested; for thereby it would seem to be probable that a corrupt Judge would favor the acquittal of the guilty, and that a well disposed Judge might, if he were not a very firm man, be tempted to be too severe in the administration of the law, that he might avoid the imputation of partiality: on the other hand, the prisoner might fear that he could not have a fair trial either from a Judge interested in his conviction or acquittal, according to the character of the man. So that the law seems to be satisfied if an interest exists.
Second. We are of opinion that he did make his application in due time. By the 23d section of the act to establish Courts of justice, R. C. 276, the Circuit Court is directed to change the venue whenever this interest exists: and by this act it is not less the duty of that Court to look to such matters, than by the act 16th February, 1825, to provide for the change of venue in civil and criminal cases, it is the right of the prisoner to claim such change of venue. This is not like to the case pleading to the jurisdiction of the Courts of common law in England. In those cases, individuals sometimes have peculiar privilege of being sued in particular Courts, and if they do not claim such privilege, the policy of the law requires that they should be supposed to abandon that privilege for the present purpose. But can it be supposed to be the policy of the law that a Judge should sit in a case where he is interested. By such a construction of the law, a father might sit in judgment on his son. The Court then is of opinion that the application was made in due time: and the facts are Well preserved on the record by the plea in bar.
Third. Is there any law to authorize the change of venue.
The repealing act of 15th January, 1831, repeals only the acts of 16th February, 1825, to provide for change of venue, and the act of 22d January, 1829, in amendment thereof. These acts, it will be remembered, made it the duly of the Circuit Court to allow a change of venue, whenever the prisoner would make the affidavit required by law, but did not repeal the 23d section of the act to establish Courts of justice above cited, by which the Courts are required to change the venue whenever cause shall appear to exist. Flow there might be good reason to repeal the one, and to leave the other provision unrepealed. If prisoners, by false affidavits, procured a change of venue, it were good reason perhaps to repeal this provision and leave still the Circuit Court the power to change, whenever facts could be proved to authorize such change. But it may be said that the 23d section above referred to, provides that the cause shall be removed to some county where the same objection does not exist, according to law, and that all the venue acts being repealed, there are now no statutory provisions to direct the removal. This objection seems to have little weight; it would be better to reject those words altogether, than to suppose the Legislature meant that a Judge should sit in a cause where he was interested. But as well observed by the counsel for the prisoner, there is other law than statute law in this State. The Legislature might well have meant that the cause should be removed in such manner that it could be tried agreeably to law, (i. e.,) proper papers sent, and that the cause should be properly certified: for which purpose it is thought that the common law and a sound construction of the above cited- section of the act to provide for establishing Courts, &c., would afford ample means. The Court, then, is of opinion that the statute law not only permits, but commands the Circuit Court to the venue in a criminal when an interest, such as is shown in this *126 cause, is shown to exist. The Circuit Court then, in the opinion of this Court, erred in sustaining the demurrer to the prisoner’s plea in bar to the prosecution, and its judgment passing sentence of death on him is therefore reversed: and the Circuit Court is directed to remove the cause to some county where the same objection does not exist.