THE STATE ex rel. FRANK W. McALLISTER, Attorney-General, v. JOHN G. SLATE, Judge of Circuit Court of Cole County.

In Banc, June 14, 1919.

1. **CHANGE OF VENUE: Change of Judge: Misnomer.** It is a misnomer to speak of a proceeding to change the trial judge in a case as a change of venue, which means a change in the place of trial.

2. **PREJUDICE OF JUDGE: Removal from Trial: Prohibition.** Prohibition is the proper remedy for the removal from the trial of a criminal case of a regular judge who is disqualified and nevertheless persists in sitting in its trial. [Sec. 5201, R. S. 1909.]

3. ———: **Existence How Established.** The ultimate fact of the existence of prejudice against the State on the part of the regular judge is what disqualifies him from trying a criminal case, and it is wholly immaterial whether his prejudice is warranted or unwarranted, or how it originates. If bias exists to an extent precluding a fair, unprejudiced and unbiased weighing of the law and facts on the State's side, then prejudice is present to a degree forbidden to a judge by both the common law and the statute (Sec. 5198, R. S. 1909).

4. ———: **Erroneous Ruling.** Prejudice cannot be predicated of a mere erroneous ruling against the State on questions of law; but such ruling may be a circumstance which, added to other things, tends to show prejudice in favor of the defendant.

5. ———: **Disqualified By Statute: Available To State.** Section 5198, Revised Statutes 1909, by declaring that "when any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try the cause" when he "is in any wise interested or prejudiced," is available to the State, and if the judge is prejudiced against the State, or what is tantamount thereto, is biased and prejudiced in favor of the defendant, he loses jurisdiction to try the case; and absent his own voluntary disqualification, his prejudice may be raised and proved by the prosecuting officer for the State.

State ex rel. McAllister v. Slate.

6. ———: ———: Change of Venue: Special Judge. Said Section 5198 is not a change-of-venue statute, but deals wholly with the incompetency of the judge, and any of the disabilities set forth in the first three subdivisions thereof are available to the State, and being admitted or established by proof the judge becomes disqualified to try the case, and a special judge must be obtained in the manner prescribed by Section 5201, Revised Statutes 1909.

## Prohibition.

PRELIMINARY RULE MADE ABSOLUTE.

*Frank W. McAllister*, Attorney-General, *John T. Gose* and *Shrader P. Howell*, Assistant Attorneys-General, and *Lee B. Ewing*, Special Counsel, for relator.

(1) Prohibition is the proper remedy where a court or judge assumes to exercise powers not granted by law, whether the exercise of the power is attempted in a case which the court is not authorized to entertain at all, or is merely an excessive and unauthorized application of judicial power in a cause otherwise properly cognizable by the court or judge in question. State ex rel. v. Fort, 210 Mo. 525; State ex rel. v. McQuillin, 256 Mo. 703; St. Louis Railroad Co. v. Wear, 135 Mo. 256; State ex rel. v. Withrow, 135 Mo. 376; State ex rel. v. Wear, 129 Mo. 619. (2) The facts clearly show that respondent is prejudiced in the case of State v. Scott. Webster's Unabridged Dictionary; Standard Dictionary; Encyclopediac Dictionary; 22 Am. & Eng. Ency. Law, p. 1173; Ex parte Howell and Ewing, 200 S. W. 65. (3) If a circuit judge is prejudiced in a cause, either for or against the State or the accused, he is incompetent to sit in said cause, and any exercise of jurisdiction therein by him except to certify to his prejudice and take steps to call another judge is beyond his power. Sec. 5198, R. S. 1909; Webster's Unabridged Dictionary; Century Dictionary; Standard Dictionary; Art 6 sec. 29, Mo. Constitution; Secs. 5200, 5201, R. S. 1909; Broom's Legal Max. 125; Ex parte Howell and Ewing, 200 S. W. 65; Jim v. State, 3 Mo. 147; State ex rel. v. Wofford, 111

Mo. 526; State ex rel. v. Wear, 129 Mo. 619; People v. Connor, 142 N. Y. 130; Coal v. Doolittle, 54 W. Va. 210, 227; Commonwealth v. Davidson, 91 Ky. 162; Dimes v. Grand Junction Canal (Eng.), 3 House of Lords Cases, 793. The State has the right, when the judge is prejudiced, to a change of venue from said judge. This was a common-law right and has never been taken away by any provisions of the Constitution or statutes of this State. Sec. 5198, R. S. 1909; 4 Blackstn's Comm. 321; 2 Hale's Pleas of the Crown, chap. 27, p. 201; 1 Pike's History of Crimes in England, 479; Rex v. Cowle, 2 Burr. 859; Rex v. Harris, 3 Burr. 1333; People v. Baker, 3 Park Cr. (N. Y.) 181; Comm. v. Ralph, 111 Pa. 365; People v. Peterson, 93 Mich. 27; Crocker v. Justices, 208 Mass. 167; People v. Webb, 1 Hill, 179; People v. Fuhrmann, 103 Mich. 593; People v. Baker, 3 Abb. Prac. 400; Chitty's Crim. Law and Prac. (Ed. 1847) marg. p. 201; Comm. v. Davidson, 91 Ky. 162; Barry v. Traux, 13 N. D. 131; Hewitt v. State, 43 Fla. 194; State ex rel. v. Durflinger, 73 Ohio St. 154; 1 Bishop's Crim. Prac. secs. 73, 113; Ex parte Howell and Ewing, 200 S. W. 72; State ex rel. v. Wear, 129 Mo. 619; State ex rel. v. Wofford, 111 Mo. 526; Jim v. State, 3 Mo. 147; State v. Gates, 20 Mo. 404; People v. Connor, 142 N. Y. 130; Coal Co. v. Doolittle, 54 W. Va. 227; State v. Holloway, 19 N. M. 528; Queen v. Philan, 14 Cox Crim. Cases, 579; Queen v. Conway, 7 Irish Com. Law Rep. 525.

*Irwin & Haley* and *A. T. Dumm* for respondent; *Roy Williams* of counsel.

(1) The only office of the writ of prohibition is to prevent a usurpation of jurisdiction by a subordinate court. High on Extraordinary Remedies (3 Ed.), secs. 767b-768; Spelling on Injunctions (2 Ed.), sec. 1725. (2) A subordinate court, having jurisdicton over the subject-matter, has the right to determine it, incorrectly as well as correctly; and its judgment will not be interfered with by a superior court through the writ of prohibition. M. K. & T. Ry. Co. v. Smith, 165 Mo. 321; State ex

rel. Laclede Bank v. Lewis, 76 Mo. 370; State ex rel. Daugherty v. Hickman, 85 Mo. App. 198; State ex rel. Dawson v. Court of Appeals, 99 Mo. 216. (3) The writ of prohibition is not a disqualifying writ. It leaves the court where it found it, either with or without jurisdiction. The want of jurisdiction must appear independently of the writ, the only office of the writ being to prohibit action without jurisdiction at the time the writ was issued; that such want of jurisdiction arose independently of the writ, either through the filing of the affidavit, by operation of some statute, or by operation of the common law. Spelling on Injunctions (2 Ed.), secs. 1716 et seq.; High on Extraordinary Remedies (3 Ed.), secs. 762 et seq; State ex rel. Morse v. Burckhartt, 87 Mo. 533; State ex rel. Ellis v. Elkin, 130 Mo. 90. (4) The right to a change of venue is purely statutory, and unless some authority is given by statute for the change demanded, none exists. State v. Anderson, 96 Mo. 247; State ex. rel. v. Wofford, 119 Mo. 410; State ex rel. v. O'Hallaron, 144 Mo. App. 574; State ex rel. v. Denton, 128 Mo. App. 304; State v. Headrick, 149 Mo. 396; State v. Barrington, 198 Mo. 85; State v. Greenwade, 72 Mo. 298; State v. Sanders, 106 Mo. 188; State v. Witherspoon, 231 Mo. 716; State v. Dyer, 139 Mo. 209. (5) Secs. 5198, 5199, 5200 and 5201, R. S. 1909, relate to the same subject-matter, and should be construed together as being *in pari materia.* State ex rel. v. Chemical Works, 249 Mo. 702; Gantt v. Brown, 238 Mo. 560; In re Ryan Estate, 174 Mo. App. 202; Hegberg v. Railroad, 164 Mo. App. 514; State ex rel. McClanahan v. De-Witt, 160 Mo. App. 304; City of Eldon v. Phillips, 180 S. W. 418. (6) Penal statutes must be strictly construed. State ex inf. Collins v. Railroad, 238 Mo. 605; Boyd v. Mo. Pac. Ry. Co., 249 Mo. 110; State v. Shortell, 174 Mo. App. 153.

FARIS, J.—This is an original proceeding in prohibition, whereby it is sought to prohibit respondent, as Judge of the Circuit Court of Cole County, from taking

further jurisdiction in the trial of the case wherein the State of Missouri is plaintiff and John W. Scott is defendant, said cause being No. 1879 upon the docket of the Cole County Circuit Court.

Heretofore, upon the petition of relator by the Attorney-General of the State of Missouri, we issued our preliminary rule in prohibition, which rule it is now sought to make absolute.

The facts upon which it is sought by the State, through its Attorney-General, to prohibit respondent from taking further jurisdiction in the trial of the case of State v. Scott, as these facts are set forth in the petition for our writ, run briefly as follows:

At and prior to the second day of February, 1918, which is the date upon which our preliminary rule herein was issued, there was pending against said John W. Scott, in the County of Cole aforesaid, an indictment in two counts, charging defendant therein with embezzlement and grand larceny. By virtue of an order made by the Governor of the State of Missouri, pursuant to the statute in such cases made and provided, the Assistant Attorney-General, together with Special Counsel for the State, appeared in the Circuit Court of Cole County, and aided in the prosecution of said case of State of Missouri v. Scott. After the making of said order by the Governor, and on the 27th day of November, 1917, the case of State v. Scott came on to be heard before respondent and the State, by Shrader P. Howell, Assistant Attorney-General, and Lee B. Ewing, as Special Counsel for the State, appeared and announced that it was ready for trial. Thereafter, but prior to the impaneling of the trial jury for the trial of the case, said Howell and Ewing became possessed, it is alleged, of information and knowledge of the existence of prejudice on the part of the respondent against the State of Missouri. The State thereupon, through its counsel, withdrew its announcement of ready for trial, and having first obtained leave of court in that behalf, filed a formal, verified motion alleging the disqualification and incompetence of

respondent to sit in the trial of the case of State v. Scott on account of the alleged prejudice of said respondent against the State. Thereupon, on the ground of this alleged disqualification of respondent, the State moved that respondent proceed in accordance with the provisions of Section 5201, Revised Statutes 1909. The latter section makes provision for the calling in of a special judge to sit in the trial of any criminal case wherein the regular judge is disqualified.

This motion being overruled, relator made the allegations therein and the fact of overruling such motion the grounds of application for our writ. In the petition for our writ relator avers that respondent is prejudiced against the State in said case of State v. Scott, and by reason thereof that he is incompetent to hear and determine said case, and prays that we issue our writ of prohibition to prohibit respondent from taking further proceedings in, or holding further jurisdiction therein, and from taking further cognizance of said case.

Our preliminary rule was, as above stated, issued, and for return thereto respondent admits all of the allegations of said petition except the fact of his prejudice in any degree in favor of the said Scott, or against the State of Missouri, which fact of prejudice he categorically denies. Respondent further denies that Messrs. Howell and Ewing, as Assistant Attorney-General and Special Counsel as aforesaid, were legally in full charge of the prosecution in the case of State v. Scott, and avers the fact to be that their acts in that behalf are without authority and not warranted by the law of the State of Missouri. This latter allegation is not referred to in the briefs, and we assume therefore that it has been abandoned.

The denial by respondent of the alleged fact of his prejudice raised an issue of fact in the case. Thereupon this court made an order appointing J. P. McBaine, Esq., of the Boone County bar, as commissioner to hear and see the evidence adduced and to find, make and return to us his findings and conclusions, both of fact and of law.

In due course our learned commissioner performed the duties made incumbent upon him by our order, and pursuant to the command thereof has reported to us that he finds the issues joined, both of law and of fact, against the respondent, and accordingly recommends that the preliminary rule herein issued be made absolute. To this report respondent has duly filed his exceptions, wherein he takes issue both upon the facts and the law. The case is before us, therefore, upon both of these questions.

I. Regard being had to the briefs of able counsel, and to the positions assumed and the arguments made therein, it is apparent that some confusion exists as to the exact nature of the relief sought herein by relator. This thought obtrudes itself from the fact that the argument is in large part directed against the assumed position that the relator is asking for prohibition, with the object of *procuring a change of venue* on the part of the State. From this assumption as a basis, it is strenuously urged that both the law and the Contitution forbid a change of venue to the State and therefore no such change is permissible.

Change of Venue.

It may be wise, therefore, in passing, to dispose of this erroneous view by a brief recourse to the history of the law and to first principle; whereupon much that is urged against the State's position at once becomes wholly irrelevant. In the very twilight of the trial jury's origin, men of the vicinage who were witnesses, or recognitors, as well as jurors, came up to the king's trial courts from the identical neighborhood in which the crime was committed for which accused was to be tried. They were brought up by a writ, which writ from the command that it contained, came to be called a *venire facias;* hence the word *venire,* which from being used as the name of the writ which brought the jurors up has come to be used sometimes in the books as the name collectively of the jurors, or those brought up by the writ. Whether we derive the word *venue* from the French

as the Anglicized spelling of the past participle of *venir*, to come, and thus it means "(those who) come," or from the modern French substantive, meaning "a coming," or whether it is derived from the Latin *vicinitatum*, meaning "of the neighborhood," shortened by usage to *vicinetum*, and again in law Latin to *visnetum*, whence *visne*, which in early days was used and written interchangeably for *venue* (10 Bacon's Abr. 364), we need not stop to ascertain, for the matter is one obscured by thick doubt. From meaning the place from which the jurors came, in course of time it came to mean the place to which the jurors came, i. e., the place of trial. According to the universal trend of modern authority *venue* now means "the place of trial for an action." [40 Cyc. 11.] In the true sense in which we are here compelled to consider it, the word does not mean the judge or the court before whom an accused is put upon his deliverance, but it means the place at which he is to be tried. Hence, if that place of trial is not to be changed, or sought so to be by this, or as a result of this, proceeding, the matter is one merely of a change of the judge before whom the trial is to be had and not *a change of the place*, i. e: the *venue* whereat he is to be brought to trial. It follows that the expression *change of venue* is a misnomer and all arguments against the permissibility of a change of venue to the State have nothing to do with the case; enjoying in that behalf a condition bearing a striking similtude in all respects to that of "the flowers that bloom in the spring."

II.   Upon the question whether prohibition is the proper remedy, the case of State ex rel. v. Wear, 129 Mo. 619, is upon principle conclusive. This is so apparent as scarcely to require exposition. The ultimate facts in the Wear case were that Judge Wear, **Prohibition.** being concededly related to the defendant, and therefore biased and prejudiced as the Legislature had determined, by the very fact that it passed the statute

disqualifying him and others similarly situated, yet persisted in sitting in the trial of the case, or in preventing another judge from taking jurisdiction therein. If the fact of the bias of Judge Wear had not been foreclosed by the legislative determination of the fact of prejudice from the fact of relationship, but had been left to be determined by evidence adduced, it is as plain as a pikestaff that the cases presented are precisely alike. Therefore, if the fact of respondent's prejudice and bias shall have been shown by the evidence in this case, he stands in a position in no wise different from that of Judge Wear, and so prohibition will lie.

Therefore, if we shall find as a matter of fact from the evidence in the case that respondent is prejudiced we bring the case, as we look at it, precisely within the procedure successfully invoked in the Wear case. How stands the evidence upon this question of fact?

Our learned commissioner who heard the evidence and who was by virtue of our order empowered to make and report to us his conclusions both of fact and of law, has found from the evidence that respondent was prejudiced. While we are not compelled to accept as final and binding upon us the conclusions of our learned commissioner either upon the law or upon the facts (State ex inf. v. Arkansas Lumber Co., 260 Mo. l. c. 271), these conclusions are at least persuasive. We have gone over the evidence and the divers exhibits forming parts thereof and have reached the identical conclusion in regard to their weight and probative effect which was reached by our commissioner. Upon this point our commissioner, summing up, reports to us thus:

"We conclude therefore that because of all Judge Slate had heard and surmised and had read that he was not in an unbiased frame of mind, and this we say without in any manner intending to reflect upon Judge Slate's honesty of purpose.

"Summing up the matter comes to this:

"Mr. Howell had conducted the investigation before the Cole County grand jury, which resulted in these

indictments. During the time of this investigation there were frequent controversies and disagreements between Judge Slate and Mr. Howell. The grand jury proceedings attracted public interest and the newspapers of the State gave a great deal of space to the investigation. A reporter for one of the papers was sent to jail by Judge Slate for contempt of court, and two editors of papers in the State were cited for contempt of court. The newspaper articles were frequently uncomplimentary to Judge Slate and he was no doubt quite exasperated by the many newspaper articles about the investigation. Judge Slate had concluded that many of the newspaper articles were inspired by Mr. Howell and others in the Attorney-General's office. Long before the cases came on for trial Judge Slate had developed strong ill-feelings against Mr. Howell. He was convinced that the Attorney-General's office gave out information to various newspaper reporters upon which they based newspaper articles criticising and reflecting upon him.

"Judge Slate's own testimony before the commissioner was also convincing that during the trial of these cases he had no little feeling of ill-will for Mr. Ewing.

"There is nothing in the record that shows that Judge Slate had any reason for favoring or shielding the defendant, John W. Scott. While the testimony shows that they had known each other for a great many years, it also shows that their social and political relations were not very friendly. We are convinced, however, that the court's attitude as to Mr. Ewing and Mr. Howell had prejudiced his mind against the prosecution of these cases, including the case of State of Missouri v. John W. Scott. We believe that because of this feeling that existed he could not and did not view with equanimity propositions advanced on behalf of the State by the State's representatives in charge of the prosecution of this case. We feel that he did not possess that calm, dispassionate and unbiased condition of mind essential in order that

the trial judge shall conduct a trial with complete impartiality.

"We feel that because of this feeling against Messrs. Howell and Ewing the interest of the State could not be sufficiently considered by Judge Slate. We think for example that had Judge Slate on the occasion in question possessed an open mind he would have listened to the argument of the attorneys for the State as to the admissibility of other offences in the case of State of Missouri v. John W. Scott, and that he would not have ruled immediately without any argument when the matter was presented to him that such testimony was inadmissible.

"The decisions of this court beginning with State v. Myers, 82 Mo. 558, and ending with State v. Patterson, 196 S. W. 3, no doubt most strongly tend to support the view that evidence of other sales of coal by Scott were admissible to prove his intent in selling the coal in question.

"Judge Slate admitted evidence of other offenses in the case of State of Missouri v. James C. Welch, and we confess we are unable to see any distinction whatever in principle between the Welch case and the Scott case. We of course recognize that it is not proof of prejudice to merely show that a judge has ruled incorrectly upon the admissibility of testimony. Our finding of prejudice is not based on these rulings alone. We think though that in view of all the circumstances, and particularly the manner in which the rulings were made, the rulings do show that Judge Slate did not maintain an open and unprejudiced mind."

To this summing up, and to the evidence upon which it is based, other facts shown by the record might have been added. Particularly the facts found in the testimony of witnesses Mayhall and Adcock touching the expressed view of respondent that "there was nothing in these cases;" this statement, it is fair to say, was denied by him as to its application to the pending case of State v. Scott.

III.   We are constrained to agree also with the view of the commissioner, that if prejudice existed, it makes no earthly difference in the law of the case as to the manner in which that prejudice was engendered. Prejudice is the ultimate fact; its origin is wholly immaterial.   Likewise it is immaterial whether it was warranted or unwarranted, justified by the facts or not justified thereby.   If in fact bias exists, to an extent which will preclude a fair, unprejudiced, and unbiased weighing of the law and the facts on the State's side upon a trial of the case of State v. Scott, then prejudice is present to a degree forbidden to a judge by both the common law (Massie v. Com., 93 Ky. 588) and the statute (Sec. 5198, R. S. 1909).

**Prejudice.**

We are also constrained to agree that the record before us shows the existence of prejudice in the mind of the respondent.   This appears not only from what we find and from what the commissioner finds, but, to use a homely expression from the vernacular, the fact of prejudice can be read from between the lines upon almost every page of the voluminous record before us.   In so ruling we acquit the learned respondent of conscious knowledge of the fact of his bias.   Regrettably, the cases pending were such as naturally to create great public interest.   They were, *also regrettably,* being tried beforehand by the press of the State in the forum of public opinion.   In the search after sensational features which would catch and hold the public eye, and create public opinion, much was printed which was based upon bald surmise.   Much also was deduced which had as its sole basis erroneous conclusions drawn from acts in themselves innocent, or acts done by respondent in the line of his official duty. From the latter acts in some instances, deductions were printed which reflected upon him unjustly and had the effect to distort respondent's enforced absence while holding regular terms of court in other counties of his circuit into seemingly studied reluctance to continue the grand jury investigation.

IV.   It is unquestionably true that from mere error in ruling against the State upon a question of law, nei- ther interest, nor bias, nor prejudice can be safely pre- dicated.   But if the proof show that upon a trial of a case wherein intent must be proven or de- duced, if at all, from proof of the doing of other similar acts, in the same neighborhood, about the same time, evidence of such similar acts was admitted in the trial of a case against A, but denied in the trial *immediately thereafter* of a case against B, such fact may be a circumstance, which, added to other things, may tend to show prejudice in favor of B. Especially if, as was the case presented, the reason and the law favoring the admissibility of the evidence of similar acts against B was, by far, more apparent and cogent in B's case than it was in the case of A. More- over, such a ruling would afford a more cogent cir- cumstance if it were announced that it would be made, as was the case here, before the trial of the case against B.   We repeat, for emphasis's sake, that nothing is better settled in law than that mere error of the kind mentioned when standing alone, disassociated from other facts and circumstances, does not afford the least evidence of bias or prejudice.

*Erroneous Rulings.*

But be all this as may be, we are convinced that in the state of mind into which the learned respondent was driven by the matters and things mentioned, it was not possible for him to try the case before him without pre- judice, and so; without more, we agree with the finding of the fact of prejudice as made by our commissioner. In so finding, we pause in all fairness to disclaim the remotest reflection upon the motives of the able and learned respondent.   His attitude may well be ascribed to the righteous exasperation of an honest and con- scientious judge driven to indignation and from judicial plumb by what he conceived to be unjust and unwar- ranted criticisms of his official conduct.

V.   Which brings us to the point of law strenuously and most ably presented by respondent's learned coun-

sel. This point, as forecast supra, is not whether the State is ever entitled to a change of venue. There is no question of a change of venue in this case. The ques-

**Jurisdiction.** tion of law is: Can a trial judge, absent his own voluntary disqualification, lose jurisdiction of a criminal case because of his interest or prejudice therein against the State? We agree with the conclusion of law upon this point of our learned commissioner, and are constrained upon both reason and authority to hold the affirmative of the question stated.

Some settled propositions as forewords are apposite. One of these is an axiom of the common law wholly applicatory by the closest analogy, which runs in substance that no man ought to sit in judgment in his own case. The other is that if the objection of prejudice against the State be raised in a case such objection must of necessity be raised by the sworn, elected, prosecuting officer of the State, that is, either by the prosecuting attorney of the county wherein the cause is pending, or by the Attorney-General of the State. Such prosecuting officers owe neither lesser nor greater duty, but precisely the same duty, to both State and defendant in the trial of criminal cases as does the judge of the circuit court. It cannot be assumed that such prosecuting officer would act in such a case except from motives bottomed upon considerations of the very highest devotion to official duty. It cannot be urged then against the question propounded that the taking of the affirmative thereof, would open a Pandora's box of evils and make trials of criminal cases subject to captious objections of disgruntled prosecuting officers, with all the delays incident thereto.

For the reason forecast by us at the outset of this discussion, we need not consider whether that provision of our organic law which guarantees to the accused in criminal prosecutions ''the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the at-

tendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county'' (Sec. 22, Art. 2, Mo. Const.) would or would not render invalid any legislative act which had for its object a trial by a jury of some other county than that wherein the alleged crime was committed. That question, upon a consideration of what the expression ''change of venue'' connotes, falls out of this case. For upon the facts here, considered in the light of the relief sought by this proceeding, this case comes precisely within another provision of our Constitution (Sec. 29, Art. 6, Mo. Cons.) which provides that: ''If there be a vacancy in the office of judge of any circuit, or if the judge be sick, absent, or from any cause unable to hold any term, or part of term of court, in any county in his circuit, such term or part of term of court may be held by a judge of any circuit, and at the request of the judge of any circuit, any terms of court or part of term in his circuit may be held by the judge of any other circuit; *and in all such cases, or in any case where the judge cannot preside. the General Assembly shall make such additional provisions for holding court as may be found necessary.''* That part of the above provision which we italicize was added to an existing provision of the Constitution of 1865 (Sec. 17, Art. 6, Mo. Cons. 1865) by the adoption of the Constitution of 1875. Pursuant to the permission granted by Section 29 of Article 6 of the Constitution of 1875, there are now divers sections of the statute affecting the matter of interest of the trial judge and providing for his disqualification upon the grounds of interest, relationship and prejudice. [See Sec. 3866, and Sec. 5198, R. S. 1909] Likewise the Legislature has passed divers statutes providing the details of calling in other judges, or of electing special judges. [See Secs. 5199, 5200, 5201, R. S. 1909.] Some of the above sections antedated in their original provisions, at least, the adoption of the Constitution of 1875. But all these, where not in conflict with the provisions of the organic law of 1875, continued in force and are now in force,

pursuant to the Constitution itself. [Sec. 1, Schedule, Mo. Cons.]

Learned counsel for respondent insist that Section 3867, supra, is alone apposite, and that Section 5198, supra, has no application. We are constrained to hold to the contrary. The legislative history of these two sections clearly shows the fallacy of this position. Section 5198 seems to have had its beginning and to have come into the statutes in 1835. [R. S. 1835, sec. 15, p. 486.] It was then a *change of venue* statute. Many changes and amendments have been made to it from time to time, till manifestly it has, so far as its own contents are concerned, long since ceased to be solely a change of venue statute. Section 5198, read at the time the matters and things here under discussion transpired, and now reads thus:

"When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases: First, when the judge of the court in which said case is pending is near of kin to the defendant by blood or marriage; or, second, when the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him by blood or marriage; or, third, when the judge is in anywise interested or prejudiced, or shall have been counsel in the cause; or, fourth, when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial."

The reason for the enactment of the original of said Section 5198 is fairly obvious and historically interesting. In 1832, and at a time when all statutes providing details for the removal of cases by change of venue had been theretofore repealed, the case of Jim v. State, 3 Mo. 147, was heard by this court. The defendant, a slave, had been convicted of murder. The trial below was before Judge David Todd, whose slave the defendant was.

Defendant had applied for a change of venue, which the trial court refused to grant. Upon defendant's appeal here the refusal to grant a change of venue was held to be error, notwithstanding the fact that all the statutes providing for the details of the practice in change of venue proceedings had been theretofore repealed. Jim v. State, 3 Mo. l. c. 177.] There then existed no applicable statute from which the practice could be deduced. All there seems to have been in our statutes at all applicable to the situation confronting this court was an extremely general statute found in the chapter on "Courts" (Sec. 23, p. 277, vol. 1, Revised Laws of Missouri 1825), which statute, so far as pertinent, reads thus:

"That no judge of the Supreme Court, who is interested in any suit or related to either party, or who shall have been of counsel in any suit or action . . . pending in said court, shall sit on the determination thereof . . . nor shall any judge of the circuit or probate court sit on the determination of any cause or proceeding, either civil or criminal, in which he is interested or related to either party . . . but such cause or proceeding if pending in the circuit court shall be removed to some county where such objection does not exist according to law . . .; provided that in no criminal case shall the venue be changed without the consent of the defendant."

The above section has come down to us after many changes and amendments as Section 3867, Revised Statutes 1909. Following the decision in the case of Jim v. State, supra, the Legislature amended the Chapter on Practice and Proceedings in Criminal Cases, by adding thereto a number of sections which set forth the grounds for granting changes of venue and provided for the details of the practice therein. [R. S. Mo. 1835, sec. 15 et seq., p. 486.] From Section 15, supra, after being many times amended, we get Section 5198. The fact that said Section 15 was passed by reason of the decision in the Jim case, is clearly indicated by one of its provisions, which is *that if the defendant be a slave and the*

*judge of the circuit court be the owner thereof*, a removal of the cause to another court shall be ordered.

It will be noted however, that Section 5198 now contains within itself no reference to any removal of the cause from the county of the venue. It merely deals with the incompetence of the circuit judge, and sets forth the conditions or disabilities under which he shall be incompetent to try a given criminal case. Such judge is made incompetent to sit in the trial under four separate and distinct conditions: "First, when the judge of the court in which said case is pending is near of kin to the defendant by blood or marriage; or, second, when the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him by blood or marriage; or, third when the judge is in anywise interested or prejudiced, or shall have been counsel in the cause; or, fourth, when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial." The first of these creats an incompetence, or disqualification, in the judge for which the State may prevent the judge from sitting by our writ of prohibition. [State ex rel. v. Wear, 129 Mo. 619.] The second seems to constitute a *status* of incompetence whereby the accused being prejudiced might alone be interested in acting. The third (the existence of prejudice or interest, or the fact that the judge has been of counsel, being granted *or proved*) will clearly serve as a basis of disqualification either for the State, or for the defendant. For, under the reasoning in the Jim case, supra, as found at side-page 176, either of the above reasons could be urged by the accused as a ground for a change of venue. The fourth ground is clearly applicable to the accused. By virtue of it, he may urge the specific ground set out in such fourth subdivision, namely, that the judge of the court "will not afford him a fair trial,"

or he may urge any other ground contained in this statute.

From the plain language of subdivision three of Section 5198, supra, it will not do to say that *interest* or *prejudice* against the State, or what is tantamount thereto, bias and prejudice in favor of the defendant, or the fact that the trial judge had been of counsel for the defendant, cannot be taken advantage of by the State, or that such things are not disqualifications, which produce, when the existence thereof is either admitted or proved, an incompetence to sit as trial judge, for which the judge may be prevented from sitting by the State's prosecuting officer. There is no manner of doubt that if the circuit judge be in fact interested or prejudiced against the State, or shall have been of counsel for the defendant, he ought not to sit. This is obviously both the moral and ethical view, and the statute has enacted these morals and ethical views into a law. No man ought to be a judge in his own case, and a case wherein a judge is interested is one wherein, to an extent and in effect, the case becomes the judge's own case. The latter is merely an evolution of the above fundamental maxim.

Neither will it suffice to say that the fact of the existence, or non-existence, of interest or prejudice must be left for determination to the automatous action of the trial judge's conscience. Nor that some such intention in the Legislature's mind is to be deduced from the fact that it has enacted no law which provides details of the practice to govern cases wherein, though interest and prejudice exist, the conscience of the trial judge has failed to move him aright. The case of State ex rel. v. Wear, 129 Mo. 619, was such a case, and this court took jurisdiction and prohibited the judge therein from holding further jurisdiction of a criminal case, wherein the son of the judge was the defendant.

Our learned commissioner in his conclusions upon the law construing Section 5198, says:

"It is contended by respondent's learned counsel that the terms and provisions of Section 5198 are applicable only to the defendant, and that a circuit judge in a criminal prosecution cannot be disqualified at the instance of the State. We do not agree with this interpretation of the section. The language of the section is general, and there is nothing stated expressly or impliedly that limits the first three subdivisions of the section to applications on behalf of a defendant. It is remembered that the fourth subdivision expressly relates to application upon the part of the defendant. That subdivision provides 'when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial' that the regular judge shall be disqualified. This section, it will be noticed, is especially liberal in favor of the defendant, and provides that the regular judge shall not sit when two reputable persons not of kin or of counsel and the defendant himself will make an affidavit that the judge *will not afford him a fair trial.*

"The fact that the fourth section is by express provision applicable to the defendant, and that the other subdivisions do not mention the defendant, strengthens the conclusion that the first three subdivisions of the sections are general provisions enumerating causes which shall disqualify a judge at the instance of either the State or the defendant.

"This section was under consideration by this court in State ex rel. v. Wear, 129 Mo. 619, and while the facts in that case are not precisely the same as in this case, yet, the principle of law to be deduced from that decision is controlling here. In that case Judge Wear was disqualified because of his relationship to the defendant on trial. This court called attention to Sections 3247 and 4174, Revised Statutes 1889, which are now Sections 3867 and 5198, Revised Statutes 1909. Judge GANTT, however, in the opinion quotes from Section 4174, now Section 5198, Revised Statutes 1909, and con-

cludes that 'from these provisions of the Constitution and statutes of this State it is plain that Judge Wear by his relation to his son, the defendant, was disqualified, and knowing this it was his imperative duty to either order an election of a special judge or request the judge of another circuit to sit in the trial of said indictment.' In that case, after Judge Wear had called in a special judge he declined to permit the special judge to try the case, but attempted, himself, to exercise jurisdiction, and was prohibited from exercising jurisdiction by a writ of prohibition from this court.

"There are numerous decisions of this court sustaining the general principle that it is the policy of the law in this State that criminal trials shall be conducted by wholly disinterested judges. [See Jim v. State, 3 Mo. 147; State v. Gates, 20 Mo. 401.] In the latter case it was said: 'It was both the policy and intention of our Legislature to have tribunals for the determination of criminal cases above all suspicion—courts upon whose disinterestedness, not only the prisoner, but the whole community can repose with entire confidence.'

"And Section 5198, Revised Statutes 1909, also indicates the policy of the State, for it will be noticed it is provided that the judge shall be incompetent to sit if he is in '*anywise* interested or *prejudiced*.'

"There is no doubt but that it is true that as strong reasons may exist why a prejudiced judge should not try a case when the suggestion comes from the State as well as when the suggestion comes from the defendant. As was said by WALKER, P. J., in Ex parte Howell, 200 S. W. 65, l. c. 72: 'A condition of the public mind may exit in a locality which would impel a public prosecutor, in an honest effort to discharge his duty, to at least call the trial judge's attention to circumstances indicating that he had, although without corrupt intent, prejudged the case, and that it should be tried by another. This would involve no question of personal integrity, afford at least a fair opportunity for the State to conduct the prosecution free from any possible ul-

State ex rel. McAllister v. Slate.

terior influence, and in nowise interfere with any right accorded to the defendant.' ''

No difficulties or embarrassments can arise in the administration of the criminal law from the view that a circuit judge may be disqualified by reason of prejudice against the State from sitting in the trial of any criminal case, and that being so disqualified such judge may be by our writ of prohibition prevented from sitting therein. The situation thus brought about by a compulsory disqualification is in no wise different than the situation which would have existed had the learned respondent of his own volition declared his own disqualification. Automatically the applicatory statutes will, as in case of a voluntary disqualification, apply and solve all the problems presented, and thus the resultant situation presents no difficulties either insuperable or insolvable.

Being constrained by the record to the view that respondent does not possess that unprejudiced and disinterested state of mind in regard to the case of State v. Scott which is requisite under the statute, and which in essential and necessary as a matter of right in the proper administration of justice, and being fully convinced that this court has the power, both at common law and by statute, to prohibit him from further exercising his jurisdiction in the trial of said case, we are of the opinion that our preliminary rule in prohibition, heretofore issued herein, ought to be made absolute. Let it be so ordered.

All concur; *Blair, Woodson* and *Graves, JJ.*, not sitting.