STATE of Missouri, Respondent,

v.

Bobby Lee LONG, Appellant.

No. KCD 28312.

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer
Denied May 2, 1977.

Application to Transfer Denied
June 14, 1977.

A. J. Falcone, James H. Thompson, Jr., Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

Defendant was indicted for selling cocaine, a Schedule II controlled substance (§ 195.020, RSMo Supp. 1971). The jury before whom defendant was tried found him guilty but was unable to agree upon the assessment of punishment. Accordingly, the trial court assessed defendant's punishment at twenty years confinement in the Department of Corrections of the State of Missouri (§ 195.200, RSMo Supp. 1971). In due course, allocution was afforded, judgment was entered and formal sentence was pronounced.

Defendant is a paraplegic and confined to a wheelchair. His physical handicap antedated the statutorily proscribed sale and still exists. It is noted at this time because, as revealed by the instances of error (4) asserted by defendant on appeal, it tangentially pervaded the trial and certain post trial proceedings below.

Defendant, as previously noted, raises four points of alleged error on appeal. *First*, he claims the trial court erred in

permitting the state, over objection, to cross-examine him in regard to a "government" pension he was receiving. *Second,* he claims the trial court erred in refusing to permit him to testify as to the cause of his paraplegia and present physical condition because it was relevant to the defense of entrapment. *Third,* he claims the state failed to make a submissible case as entrapment was an issue and the state failed to come "forward with substantial evidence that the intent to commit the charged offense originated with the accused rather than the prosecuting authority." *Fourth,* he claims he was prejudiced and denied due process of law (U.S. Const. Amend. XIV) in that the trial judge failed to sua sponte disqualify himself from hearing and ruling on defendant's motion for new trial because of bias and prejudice against defense counsel.

Before specifically addressing the various points, a resume of certain basic facts appears in order. At approximately 9:30 P.M. on March 2, 1974, defendant sold a "dime bag"[1] of cocaine to Edward Moses for $10.00. Moses, a member of the Missouri State Highway Patrol, was operating as an "undercover agent" at the time. According to the state's evidence, facts leading up to and surrounding the sale are as follows: Several days prior to the sale in question Moses had purchased cocaine from a person named B_____ S_____. During the early part of the evening on the day of the sale Moses again encountered B_____ S_____ at a tavern in Brookfield, Missouri, at which time the latter accompanied Moses to the residence of defendant. This was Moses's first encounter with defendant. The record is silent as to any conversation between Moses and B_____ S_____ which precipitated the visit. After arriving at defendant's residence, a short conversation ensued between Moses and defendant, the gist thereof being that Moses informed defendant that he wished to purchase a gram of cocaine and defendant replied that he was only selling "$10.00 quantities". An agree-ment was then reached between defendant and Moses for the sale of a "dime bag" for $10.00 and the sale was consummated. Defendant took the stand in his own behalf and testified that at approximately 1:30 P.M. on the day in question B_____ S_____ came to his residence and sold him five "dime bags" of cocaine. According to defendant, he purchased the cocaine because he "was kind of feeling down in the dumps". Defendant further testified that later that evening, at the request of B_____ S_____, he sold a "dime bag" of the cocaine to Moses. By way of rebuttal, the state recalled Moses to the stand at which time he testified that B_____ S_____ was not "working" with him, was not his "agent", and was not an "informer".

Defendant first complains that the trial court erred in permitting the state on cross-examination, over objection, to inquire of him about a government pension he was receiving. In order to place this point in its proper context, it is necessary to refer to the following testimony elicited from defendant by his own counsel on direct examination:

"Q Are you employed?

A No, sir.

Q Are you able to work?

A No, sir."

While being cross-examined by the state, defendant was asked, "Mr. Long, you actually, although you don't work you receive a government pension of some $1600.00 a month?" Defendant's answer thereto, after an objection by defense counsel was overruled, was "Yes, sir".

■ Section 546.260, RSMo 1969, apropos defendant's first point, provides, in part, that a defendant in a criminal case who testifies in his own behalf "shall be liable to cross-examination, as to any matter referred to in his examination in chief . .". This statutory provision has been interpreted as permitting the state to cross-examine a defendant in detail with respect to matters about which he testified on direct ex-

---

1. In the vernacular of the street, a "$10.00 quantity".

amination. *State v. Dalton*, 433 S.W.2d 562, 563–64 (Mo.1968); *State v. Moser*, 423 S.W.2d 804, 806 (Mo.1968); and *State v. Rice*, 519 S.W.2d 573, 575 (Mo.App.1975). As cogently stated in *State v. Williams*, 519 S.W.2d 576, 578 (Mo.App.1975), relative to the scope of cross-examination of a defendant, "the state is not confined to a categorical review of the matters covered or stated in the direct examination, but that cross-examination may cover all matters within the fair purview of the direct examination."

■ It is manifest that the heretofore referred to testimony of defendant on direct examination was an attempt to appeal to the jury's natural sense of pity and sympathy for a physically handicapped person such as defendant. As defendant opened the matter up, he was in no position to cry foul when the state cross-examined him about the $1600.00 a month government pension he was receiving. The state's cross-examination fell within the "fair purview" of the direct examination conducted of defendant. Even though defendant's testimony on direct examination appears to have been irrelevant and self-serving, this did not preclude the state from probing and clarifying it on cross-examination. *State v. McLaughlin*, 149 Mo. 19, 50 S.W. 315, 319 (1899). To allow defendant to play upon the jury's sympathy by intimating that he was without any means of support due to his physical condition, and then deny the state the right to put the matter in its true context on cross-examination, would effectively immunize defendant from the risk of being cross-examined on an irrelevant and self-serving matter which he, of his own volition, injected into the case. Such a result should not be countenanced. For reasons stated, any claim of error posited by defendant's first point is denied.

■ Defendant's second point, that the trial court erred in not permitting him to testify as to the cause of his paraplegia, as it was relevant to the defense of entrapment, necessitates a preliminary statement of the law of entrapment as it exists in this state. Missouri hews to the "origin of intent" theory of entrapment[2] as initially articulated in *State v. Decker*, 321 Mo. 1163, 14 S.W.2d 617, 619–20 (1929): "Where the criminal intent originates in the mind of the defendant on trial, and the offense is accomplished, it constitutes no defense that an opportunity is furnished, or that an officer aids the accused in the commission of the crime, in order to obtain evidence upon which to prosecute him. But where the criminal intent originates in the mind of the entrapper, and the accused is lured into the commission of the offense charged, in order to prosecute him therefor, it is the general rule that no conviction may be had, though the criminality of the act is not affected by any question of consent."

As gleaned from the argument advanced by defendant, he sought to show the cause of his paralysis and present physical condition because of a misplaced notion of their relevancy and probativeness to show that intent to commit the charged offense originated with the prosecuting authority. It is inconceivable how either the cause of defendant's paralysis or his present physical condition could be said to have any bearing on the "origin of intent" in the sense contended by defendant. In short, the ramifications which defendant sought to introduce regarding his paraplegic condition, its cause and the resultant physical condition in which it left him, were barren of any tendency to prove that intent to sell the cocaine in question originated with the prosecuting authority. Failing, as they did, to possess any relevancy or probative value touching a viable issue in the case, the trial court did not err in sustaining the timely objection lodged by the state.

■ A degree of affinity exists between defendant's second and third points. By way of the latter, defendant claims the

---

**2.** *State v. Stock*, 463 S.W.2d 889 (Mo.1971); *State v. Davis*, 450 S.W.2d 168 (Mo.1970); *State v. Hammond*, 447 S.W.2d 253 (Mo.1969);

and *State v. Weinzerl*, 495 S.W.2d 137 (Mo. App.1973).

state failed to make a submissible case because of its failure to come "forward with substantial evidence that the intent to commit the charged offense originated with the accused rather than the prosecuting authority." Defendant draws on *State v. Weinzerl*, 495 S.W.2d 137, 142 (Mo.App.1973). In *Weinzerl* the court noted, in view of certain language contained in *State v. Decker*, supra,[3] that under the prevailing "origin of intent" test, once entrapment becomes a viable issue in a criminal case, the absence of entrapment becomes an essential element of the criminal offense being prosecuted and the state bears the burden of going forward with prima facie proof which would permit the trier of the facts to find, beyond a reasonable doubt, that the intent to commit the charged offense originated with the accused rather than with the prosecuting authority. Notwithstanding the principle just iterated, defendant's third point lacks sustaining vitality because it rests upon a false premise—defendant's unilateral assumption that under the evidence entrapment was raised as an issue in the case. Mere solicitation by a government agent does not raise an issue of entrapment. *State v. Crump*, 454 S.W.2d 519, 521 (Mo.1970); and *State v. Weinzerl*, supra, at 143. Nor does the use of a governmental agent as a willing buyer, without more, raise an issue of entrapment. *State v. Napolis*, 436 S.W.2d 645, 649 (Mo.1969); and *State v. Weinzerl*, supra, at 143. When the evidence in this case is reviewed in its totality, the most that can be said is that Moses, although concededly an undercover agent, solicited defendant to sell him some cocaine and defendant did so. The validity of this conclusion is in no way tempered by defendant's testimony that B——— S——— asked him to make the sale to Moses, because the record conclusively demonstrates that B——— S———, although instrumental in bringing defendant and Moses together, was not an "informer" for,

an "agent" of, or "working" with Moses. The request made by B——— S——— to defendant bears no overtones of defendant being induced to make the sale by reason of enticements held out by B——— S———; nor does defendant suggest (and the evidence would not support him if he did) that B——— S——— ingratiated himself into defendant's trust and confidence in order to provide an opportunity for Moses to purchase the cocaine. See *State v. Weinzerl*, supra, at 143, and cases therein cited. Absent any semblance of reluctance on the part of defendant, or overreaching by any governmental authority, defendant willingly sold the cocaine to Moses. Accordingly, the evidence did not inject entrapment into the case. For this reason, the absence of entrapment was not an element of the state's case and no burden was imposed upon it, as submitted by defendant, to come "forward with substantial evidence that the intent to commit the charged offense originated with the accused rather than the prosecuting authority." *State v. Admire*, 495 S.W.2d 132, 134 (Mo.App.1973); and *State v. Weinzerl*, supra, at 142. Despite defendant's protestations to the contrary, the state made a submissible case.

■ Defendant, in his fourth and final point, attacks the trial judge's failure to sua sponte disqualify himself from hearing and ruling defendant's motion for new trial. According to defendant, bias and prejudice toward defense counsel left the trial judge no choice but to sua sponte disqualify himself and his failure to do so deprived defendant of a fair hearing on his motion for new trial and, concomitantly, due process of law. Disposition of this point necessitates a recitation of certain facts and events which occurred during the interim between rendition of the jury's verdict and the hearing on and disposition of defendant's motion for new trial.

After the jury returned its verdict into open court finding defendant guilty but

---

**3.** As succinctly stated in *State v. Decker*, supra, 14 S.W.2d l. c. 620, "[t]he law of the case comprehends the elements of the offense charged, as shown by the evidence" and

"[e]ntrapment was one of the elements of the offense, for, if defendant was entrapped, he was not guilty, as we have shown."

unable to agree upon punishment, the trial judge stated that he was setting defendant's punishment at twenty years confinement in the Missouri Department of Corrections and, simultaneously, announced that "formal sentencing" would be deferred until a later date. Shortly thereafter an article concerning the trial appeared in a Kansas City newspaper. According to defendant's brief, "comments" in the newspaper article "calling the Judge's 20-year sentence of the Appellant 'shocking and grossly excessive' were attributed to Appellant's attorney." Subsequently, defendant's motion for new trial was timely heard and overruled. No charge was made in the motion for new trial that the sentence fixed by the trial court was excessive or that it smacked of being cruel and inhuman punishment. Parenthetically, no charge to that effect has been tendered or argued on appeal. No request was made by defendant that the imposition of sentence be suspended and that he be placed on probation. After defendant's motion for new trial was overruled, defendant was afforded allocution, judgment was entered and formal sentence was pronounced. As defense counsel was preparing to leave the courtroom, the trial court called him to the bench and asked him if he was familiar with Rule 4, DR 7–107(E).[4] Defense counsel replied that he was. Sensing that he might be subjected to disciplinary action, defense counsel advised the trial judge that he refused to answer any further questions and that he wished to be represented by counsel "if the Court is proposing that I be disciplined before this Court." All further questioning terminated and the trial judge advised defense counsel that he was going to appoint a special prosecutor "to investigate possible contempt proceedings against you". The trial judge further advised defense counsel that if the special prosecutor "determines that proceedings should be instituted, and if in fact

a citation for contempt is issued, it is my intention to, in complete and total fairness to you, . . . disqualify myself and ask the Supreme Court of Missouri to appoint a special judge to hear this contempt proceedings."

The state contends that defendant's plea that the trial judge should have sua sponte recused himself has not been preserved for appellate review because defendant failed to seek recusation at the trial level. The state tersely argues: "It is the general proposition that in order to preserve an error for review, the attorney must give the trial judge a chance to correct the error." This argument begs the merits of the question and neither side has cited any apposite authority, pro or con, on its procedural aspect. This court concludes that it is unnecessary to address this procedural hiatus as defendant's argument readily lends itself to being pragmatically disposed of on a factual basis. By so doing, it is also unnecessary to decide whether the action taken by the trial judge in response to defense counsel's intemperate statement to the press was, as defendant would have this court believe, a release of pent up fury and hostility against defense counsel. Nor is it necessary to ignore that this state recognizes that bias or hostility on the part of the trial judge toward counsel may be of such a degree as to be tantamount to prejudice against counsel's client. *State ex rel. McAllister v. Slate*, 278 Mo. 570, 214 S.W. 85, 8 A.L.R. 1226 (banc 1919).

As a matter of chronology, the newspaper article which precipitated the event which defendant relies upon as an indicium of bias and prejudice appeared during the interim between the trial and the hearing and ruling on defendant's motion for new trial. Additionally, and constituting an equally salient chronological fact, the trial judge did not confront defense counsel with the newspaper article until after defendant's

---

4. "After the completion of a trial or disposition without trial of a criminal matter and prior to the imposition of sentence, a lawyer or law firm associated with the prosecution or defense shall not make or participate in making an

extrajudicial statement that a reasonable person would expect to be disseminated by public communication and that is reasonably likely to affect the imposition of sentence."

motion for new trial was heard and over-ruled, allocution had been afforded, and judgment entered and formal sentence pronounced. Consequently, from defendant's standpoint the only potential objects of taint regarding the purported bias and prejudice, if such in fact existed with respect to defense counsel, were the trial judge's denial of defendant's motion for new trial and the formal pronouncement of sentence. This court's rejection of all other charges of error leveled by defendant on appeal conclusively rebuts any claim that the trial judge's purported bias and prejudice manifested itself when defendant's motion for new trial was denied. Further, the fact that the formal sentence, when pronounced, echoed verbatim the assessment of punishment announced by the trial judge shortly after the jury returned its verdict, conclusively rebuts any claim that the trial judge's alleged antipathy manifested itself when formal sentence was pronounced. Defendant's fourth and final point, so viewed, fails to afford him any relief.

Judgment affirmed.

All concur.