STATE of Missouri, Respondent,

v.

Wade PUGH, Appellant.

No. WD 33095.

Missouri Court of Appeals,
Western District.

Feb. 15, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 29, 1983.

Application to Transfer Denied May 31, 1983.

L.R. Magee, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kelly Klopfenstein, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The appellant, Wade Pugh, was charged with four counts of Stealing and four counts of Burglary in the Second Degree. He was jury convicted of two counts of the Class C felony of Second Degree Stealing, Section 570.030, RSMo, and two counts of Second Degree Burglary, Section 569.170, RSMo, also a Class C felony. He was sentenced to one year in the Ray County Correctional Facility on each count, all to be served concurrently.

The state's evidence showed that on the weekend of August 1–2, 1980, owners of several mobile homes in the Sunshine Lake area of Ray County discovered that their trailer homes had been broken into. Each of the owners had visited their property the previous weekend and had left their mobile homes locked and secured.

Each of the burglary victims, testified at trial. Mobile home owner, Emmett Fairfield had a tape player, cassette, a "power pack," and speakers removed from his trailer, the total value of which exceeded $150.00. Marcene Latellier, another owner, testified that the padlock had been pried off her trailer and that a microwave, a television set, and a toaster oven had been taken. Ben Butler found the lock and clasp torn loose from his trailer. His stolen items (an outboard motor, rifles, fishing equipment, and lights) were valued at $2,200.00. Finally, still another Sunshine Lake resident, Jim Wright, testified that the lock on his cabin was pried off. Missing from his cabin were an electric trolling motor, a tackle box, a lantern, and a rod and reel. He estimated the value of these items at between $250.00 and $300.00.

Louis Long, Chief Deputy Sheriff of Ray County, testified that the appellant gave a statement to the police in which he admitted that he had gone to Sunshine Lake on or near July 31, 1980 and removed a radio from one of the trailers. He also testified that Butch Summers, to whom the property had been sold or fenced, had delivered much of it to Long at the jail.

Two of the appellant's co-perpetrators, Thomas Clark and Willie Hambrick, testified that they accompanied the appellant and a fourth person to Sunshine Lake one night in late July, during the period in which the thefts took place. The two testified that the four entered into the first trailer, from which appellant removed the tackle box. The second trailer which they came upon had already been broken into. Appellant told Hambrick and Clark that there wasn't anything in the trailer. This was Ben Butler's trailer, from which the rifle and the boat motor had apparently already been taken the previous night. The group then moved on to a third trailer (Latellier) and broke in. From this trailer, appellant removed a toaster oven. The others took a television and a microwave. Finally, the four broke into the fourth trailer and removed a power pack.

Hambrick and Clark testified the group attempted to sell the stolen merchandise. Appellant and the others who participated sold the loot to a Butch Summers for $100 and a quantity of marijuana, all divided among them.

Appellant presented no evidence at trial. The jury returned guilty verdicts on the burglary and stealing counts stemming from the Fairfield and Latellier trailers. The jury recommended one year on the four counts to be served concurrently.

Appellant's trial ended on June 30, 1981. He filed a motion for new trial on July 7. The trial judge, after receiving a presentence investigation report on August 4, 1981, set August 21 as the date for sentencing. On August 21, appellant argued that his motion for new trial, had never been "noticed up" nor ruled upon. In the absence of a ruling on the motion, appellant argued, sentencing would be improper. Despite appellant's protestations, the trial court proceeded with the sentencing and commitment, and set September 1 as the

hearing date on the motion for new trial. Sentence was imposed for one year on all counts, to be served concurrently. Appellant applied for a writ of habeas corpus and the trial court, in accordance with an order from this court, set aside the sentencing and commitment order entered by the trial court on August 21. The state concedes the sentencing of September 1 was premature.

In his habeas corpus petition, the appellant named the trial judge as a respondent (along with the sheriff). Since named in the habeas action, the judge had the prosecutor represent him. Appellant, says this created an attorney-client relationship between the judge and the prosecutor and filed a motion to disqualify the judge on August 29, three days prior to the hearing on appellant's motion for new trial. Appellant argued that this relationship between the prosecution and the trial court judge "placed the court's impartiality into question."

■ Appellant's first point on appeal is that the judge's failure to disqualify himself from hearing the motion for new trial constitutes reversible error. Rule 32.07 (former Rule 30.12) provides the mechanism for applying for a change of judge *prior* to trial.

"After the trial begins the trial judge should not disqualify himself in the absence of actual prejudice. In this case there was no showing of actual prejudice. Of course the defendant is entitled to a fair and impartial judge and jury, and his right thereto was not violated in this case."

*State v. Vermillion,* 486 S.W.2d 437, 441 (Mo.1972). However, no such "actual prejudice" is evident from the record here, for at appellant's resentencing the trial judge imposed the same sentence which the jury had recommended and which he had imposed at the invalid sentencing of August 21. As this court held in *State v. Long,* 550 S.W.2d 854 (Mo.App.1977):

"Further, the fact that the formal sentence, when pronounced, echoed verbatim the assessment announced by the trial judge after the jury returned its verdict, *conclusively rebuts* any claim that the trial judge's alleged antipathy manifested itself when formal sentence was pronounced.

*Id.* at 860.

As in *Long, supra,* no charge was here made in the new trial motion that the sentence fixed by the court was excessive or amounted to cruel or unusual punishment.

Here, any alleged prejudice arose after the jury recommended its sentence and after the judge prematurely announced sentence. Because the exact same sentence was imposed both before and after the alleged "taint" occurred, it is conclusively presumed, under the rule set out in *Long,* that the judge was not prejudiced against the defendant in ruling on his motion for new trial and in sentencing him. His first point is denied.

■ Appellant next contends the trial court erred in denying his request for a mistrial based upon the following statement made by the prosecution during closing argument:

"What defense was presented? The State presented their case. What was the defense? The defense was that the diagram—"

Appellant argued the statement was "an out and out comment on the defendant not testifying", and could be, "construed as a pointed reference to the failure of the defendant to testify, violative of Article I, Section 19 of the Missouri Constitution and the Fifth Amendment of the United States Constitution."

The comments here did not amount to a "direct and certain" reference to failure of the accused's to testify, thus no constitutional prohibition was violated. *State v. Inscore,* 592 S.W.2d 809, 812–13 (Mo. banc 1980); (If defendant's attorney would have produced any defense he would have done it—not held improper.) *State v. Hutchinson,* 458 S.W.2d 553, 555–56 (Mo. banc 1970). (Argument that defendant could have called any witnesses, was free to offer any evidence and had offered no evidence held not prejudicial). This statement only to the

defendant's offering no evidence, not on his failure to testify, comes within the permissible rule developed in *Hutchinson* and *Inscore*.

In his third point, appellant, argues that the trial court erred in admitting "hearsay testimony of Sheriff Long and Willie Hambrick" relating to out-of-court declarations made by Butch Summers, the receiver of the stolen goods. Summers did not testify.

During the state's case, the following exchange took place between the prosecution and deputy sheriff:

State: Where did you recover these items?

Long: A subject, by the name of Butch Summers from Excelsior Springs, delivered them to our jail.

State: He voluntarily brought them in?

Long: After he was talked to, yes.

State: Did he advise you where [they] had come from?

Long: Yes, sir.

At that point appellant raised a hearsay objection which was sustained on the ground Summers could not implicate other people unless he himself was in court. The prosecution then posed the following question.

State: Mr. Long, did Mr. Summers indicate how—let me rephrase that question. Did Mr. Summers indicate whether this property was stolen or not?

The appellant objected to the question on hearsay grounds, but the objection was overruled. Long's answer was "yes, he did".

■ As to the question pertaining to "where the property had come from", the objection was untimely. The question as to whether Summers indicated whether "this property was stolen or not", although technically calling for hearsay, the affirmative answer did not establish the property to be stolen. It did not accuse appellant as the thief. Even if both statements be hearsay, their effect is not prejudicial, the hearsay was cumulative as to other evidence that came in about the property being stolen,

appellant's involvement and the property being sold to Summers. *State v. Nimrod*, 484 S.W.2d 475, 479 (Mo.1972).

During the questioning of co-perpetrator, Thomas Clark, the following exchange took place:

State: What else was discussed?

Clark: Butch told me and Willie, he said, look at this Winchester rifle that Wade Pugh and Mearl Watson got the next night before we went down there.

No objection was made as to this presentation of hearsay testimony.

Later, during the state's questioning of co-participant, Willie Hambrick, the following exchange took place.

State: Did you see any guns?

Hambrick: Guns.

State: Had you taken the gun?

Hambrick: No.

State: Where did the gun come from?

\* \* \* \* \* \*

State: Did you know where the gun came from?

Hambrick: I ain't for sure where it came from.

State: Did Butch Summers say anything about that gun?

\* \* \* \* \* \*

State: Was that statement made in the presence of the defendant?

Hambrick: Yes, sir.

\* \* \* \* \* \*

State: What did Mr. Summers state?

Hambrick: He said that Mearl and Wade [appellant] had brought him the gun.

Appellant objected to the elicitation of this last response on hearsay grounds, claiming that it represented an out-of-court statement offered to prove the truth of the matter asserted.

■ This line of questioning was about the rifle taken from victim Butler's trailer on the previous night by appellant and "Mearl" (who did not testify). As stated previously the rifle was not brought into the sheriff's office by Summers nor recovered by trial. It is important that appellant

did not object to Clark's prior testimony as to how the gun was in Summers possession. The fact that the jury returned a verdict of "not guilty" on the burglary count and the stealing count relating to the Butler mobile home, takes away argument that this questioning had a decisive effect on the jury or resulted in a miscarriage of justice. *Billings v. State*, 503 S.W.2d 57 (Mo.App.1973); *see also, State v. Robinson*, 588 S.W.2d 247 (Mo.App.1979). Appellant's third point is denied.

■ In his fourth point on appeal, the appellant urges that the trial court committed prejudicial error in allowing the sequestered jury to be placed in custody of the sheriff or of his deputy. Long, the chief deputy sheriff of Ray County, and two prisoners in sheriff's custody, testified for the state. As a result, appellant objected at trial to the placing of the sequestered jury into the custody of the sheriff or one of his deputies. Appellant claims this action prejudiced his cause in that it emphasized the credibility of the sheriff's office and intimidated the jurors into returning a verdict of "guilty".

Appellant relies on case law requiring disqualification of a sheriff to have custody of the jury in a case where he is a prosecuting witness. *State v. Parker*, 378 S.W.2d 274 (Mo.App.1964). *See State v. Tyarks*, 433 S.W.2d 568, 560–70 (Mo.1968) (where officer in charge of the jury is also "substantial" witness creates reversible error). In the instant case, however, the testifying officer, Long, was not put in charge of the jury—another deputy was. *State v. Cochran*, 203 S.W.2d 707, 356 Mo. 778 (Mo. banc 1947). In *Cochran, supra,* the defendant objected because the sheriff and one of his deputies, both of whom testified for the state at a preliminary hearing on the question of the voluntariness of the defendant's confession, were placed in charge of the jury. The defendant's motion for mistrial was overruled, the testifying sheriff and deputy were declared by the court to be disqualified as custodians of the jury. The trial court then appointed two other deputies to be in charge of the jury, and allowed the sheriff and the deputy to testify at trial. The opinion in *Cochran, supra,* held there was no prejudicial error in the court's action. The trial court here did not err in allowing a deputy sheriff to maintain custodial control over the jury, even though his superior, the chief deputy testified at trial.

■ Appellant argues that the trial court erred in denying his motion for mistrial based on the presence of the state's exhibits in the courtroom, in view of the potential jurors during voir dire, and prior to their admission into evidence. These exhibits, including some of the stolen items later offered and admitted into evidence without objection by defendant, had been placed in the courtroom on the morning the trial was to begin, before the jury panel assembled in the courtroom, and were removed during the first recess after voir dire was completed. The appellant claims the presence of these exhibits during voir dire exam prejudiced his cause by allowing the jury to visualize the state's case before it began, thereby swaying the jury toward a conviction. Appellant also claims that the inconvenience which the jurors experienced in having to step over the exhibits caused them to be prejudiced against him.

At least one Missouri court has stated that the exhibition of evidence before the jury, prior to the time of its introduction, is not prejudicial error to warrant reversal of a criminal conviction. *State v. Duncan*, 116 Mo. 288 (1893), 22 S.W. 699, 704, 716. In *Duncan*, an objection was made by counsel for the defense to the presence of a revolver exhibited on a table before it had been admitted into evidence. The Supreme Court held:

"What harm the mere anticipatory presence of the pistol on the table could do the cause of the defendant is very difficult to conceive."

Surely the presence of a revolver in view of the jury before its admission is potentially more prejudicial than the appearance of stolen household appliances. If the defendant was not prejudiced in *Duncan*, it is difficult to say that the appellant here was prejudiced.

The judge had the exhibits removed at the first recess. No discernable prejudice was shown by defendant. The declaration of a mistrial, a drastic remedy, was not needed here. *State v. Reynolds,* 608 S.W.2d 422, 427 (Mo.1980). While this point is denied, it would be hoped that courtrooms would not be further used as repositories for exhibits intended to be introduced by the state where such items are in view of jurors or potential jurors.

The judgment is affirmed.